OPINION OF THE COURT
Fuchsberg, J.
We hold that, in the circumstances of this case, a release *105 signed by the plaintiff as a precondition for his enrollment in defendant’s parachute jumping course does not bar him from suing for personal injuries he allegedly incurred as a result of defendant’s negligence.
Plaintiff Bruce Gross, wishing to learn how to parachute, enrolled in the Stormville Parachute Center Training School, a facility owned and operated by the defendant William Sweet for the purpose of offering instruction in the sport. The ensuing events are essentially undisputed. As a prerequisite for admission into the course, Gross had to pay a fee and sign a form entitled "Responsibility Release”. He was then given the standard introductory lesson, which consisted of approximately one hour of on-land training, including oral instruction as well as several jumps off a two and a half foot table. Plaintiff then was equipped with a parachute and flown to an altitude of 2,800 feet for his first practice jump. Upon coming in contact with the ground on his descent, plaintiff suffered serious personal injuries.
The suit is grounded on negligence, breach of warranty and gross negligence. In the main, plaintiff claims that defendant failed to provide adequate training and safe equipment, violated certain rules and procedures promulgated by the Federal Aviation Administration governing the conduct of parachute jumping schools and failed to warn him sufficiently of the attendant dangers.
Defendant pleaded the release plaintiff had signed and moved for summary judgment, contending that the terms of the release exculpated the defendant from any liability. Plaintiff, in turn, cross-moved to strike this affirmative defense contending, primarily, that the terms of the release did not specifically bar a suit for personal injuries negligently caused by the defendant. He also urged that, as a matter of policy, the release should not be enforceable as between a student and his teacher, a relationship in which one of the parties holds himself out as qualified and responsible to provide training in a skill and the other party relies on this expertise, particularly in the context of an activity in which the degree of training necessary for safe participation is much greater than might be apparent to a novice. Alternatively, plaintiff argues that the release in any event does not excuse defendant’s violation of the Federal Aviation Administration’s regulations governing parachute jumping schools and student *106 parachutists, one of which allegedly required that a medical certificate be furnished as a prerequisite to enrollment in a parachute jumping course. Defendant’s failure to request one, plaintiff asserts, bore critically on his situation because, despite his having informed defendant that several years earlier an orthopedic pin had been inserted in his leg, he was accepted as a student though, as the school must have known, landing in a parachute puts special stress on one’s legs.
However, Special Term granted defendant’s motion, denied plaintiff’s cross motion and dismissed the complaint. On plaintiff’s appeal from that order, a divided Appellate Division reversed, reinstated the complaint and granted plaintiff’s motion to dismiss the affirmative defense. The appeal is now before us on a certified question: "Was the order of this Court, which reinstated the complaint and granted plaintiff’s motion to dismiss the affirmative defense of release, correct as a matter of law?” Our answer is that it was.
 We begin with the proposition, too well settled to invoke any dispute, that the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence and though, with certain exceptions, they are enforceable, such agreements are subject to close judicial scrutiny (Van Dyke Prods. v Eastman Kodak Co., 12 NY2d 301, 304; 4 Williston, Contracts [3d Jaeger ed], § 602A, pp 326, 332). To the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have been viewed as wholly void (see Restatement, Contracts, § 575; 15 Williston, Contracts [3d Jaeger ed], § 1750A, p 141; New York Cent R. R. Co. v Mohney, 252 US 152; cf. Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 297). And so, here, so much of plaintiff’s complaint as contains allegations that defendant was grossly negligent, may not be barred by the release in any event. But we need not explore further this possibility for we conclude the complaint in its entirety withstands the exculpatory agreement.
Nor need we consider plaintiff’s request that we ignore the release on the grounds that the special relationship of the parties and the public interest involved forbids its enforcement. While we have, for example, had occasion to invalidate such provisions when they were contained in the contract between a passenger and a common carrier (Conklin v Canadian-Colonial Airways, 266 NY 244), or in a contract between a customer and a public utility under a duty to furnish *107 telephone service (Emery v Rochester Tel. Corp., 156 Misc 562, affd 246 App Div 787) or when imposed by an employer as a condition of employment (Johnston v Fargo, 184 NY 379), the circumstances here do not fit within any of these relationships. And, though we note that a recent statute renders void agreements purporting to exempt from liability for negligence those engaged in a variety of businesses that serve the public (e.g., landlords [General Obligations Law, § 5-321]; caterers [§ 5-322]; building service or maintenance contractors [§ 5-323]; those who maintain garages or parking garages [§ 5-325]; or pools, gymnasiums or places of public amusement or recreation [§ 5-326]), defendant’s occupation does not fall within any of these classes either. We also decline, at this point, plaintiff’s invitation that we proceed further to consider what effect, if any, the alleged contravention of Federal regulations may have on the relationship of the parties or the public interest involved. Such questions need not be reached in view of our holding that the wording of the exculpatory agreement does not preclude plaintiff’s suit for negligence.
Not only does this stringent standard require that the drafter of such an agreement make its terms unambiguous, but it mandates that the terms be understandable as well. Thus, a provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and lexicon. (Rappaport v Phil Gottlieb-Sattler, Inc., 280 App Div 424, affd 305 NY 594.) Of course, this *108 does not imply that only simple or monosyllabic language can be used in such clauses. Rather, what the law demands is that such provisions be clear and coherent (cf. General Obligations Law, § 5-702).
By and large, if such is the intention of the parties, the fairest course is to provide explicitly that claims based on negligence are included (see Ciofalo v Vic Tanney Gyms, supra, p 296 [plaintiff "agreed to assume full responsibility for any injuries which might occur to her in or about defendant’s premises, 'including but without limitation, any claims for personal injuries resulting from or arising out of the negligence of the defendant”]). That does not mean that the word "negligence” must be employed for courts to give effect to an exculpatory agreement; however, words conveying a similar import must appear (see Theroux v Kedenburg Racing Assn., 50 Misc 2d 97, 99, affd 28 AD2d 960 [agreement provided for release of liability for any injury "regardless of how such injury * * * may arise, and regardless of who is at fault * * * and even if the loss is caused by the neglect or fault of’ the defendant]).
We are, of course, cognizant of the fact that the general rule of strict judicial construction has been somewhat liberalized in its application to exoneration clauses in indemnification agreements, which are usually "negotiated at arm’s length between * * * sophisticated business entities” and which can be viewed as merely "allocating the risk of liability to third parties between themselves, essentially through the employment of insurance” (Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153, 158, 161; see Levine v Shell Oil Co., 28 NY2d 205, 212; Liff v Consolidated Edison Co. of N. Y., 23 NY2d 854). In such cases, the law, reflecting the economic realities, will recognize an agreement to relieve one party from the consequences of his negligence on the strength of a broadly worded clause framed in less precise language than would normally be required, though even then it must evince the "unmistakable intent of the parties” (Kurek v Port Chester Housing Auth., 18 NY2d 450, 456).
The case before us today obviously does not fit within this exception to the strict legal standard generally employed by the courts of this State under which exculpatory provisions drawn, in broad and sweeping language have not been given effect. For example, agreements to release from "any and all responsibility or liability of any nature whatsoever for any *109 loss of property or personal injury occurring on this trip” (Kaufman v American Youth Hostels, 5 NY2d 1016, modifying 6 AD2d 223, 228, 229) or to "waive claim for any loss to personal property, or for any personal injury while a member of [a] club” (Hertzog v Harrison Is. Shores, 21 AD2d 859) have not barred claims based on negligence (see Bernstein v Seacliff Beach Club, 35 Misc 2d 153). Moreover, in Boll v Sharp & Dohme (281 App Div 568, affd 307 NY 646, supra), we held not sufficiently unambiguous a release form in which a blood donor was required to agree that defendants were not "in any way responsible for any consequences * * * resulting from the giving of such blood or from any of the tests, examinations or procedures incident thereto”, and further "release[d] and discharge[d] [defendants] from all claims and demands whatsoever * * * against them or any of them by reason of any matter relative or incident to such donation of blood”. (307 NY, p 647.) The donor was thus allowed to sue in negligence for injuries he sustained when, on the completion of the blood donation, he fainted and fell to the floor.
With all this as background, the language of the "Responsibility Release” in the case before us, must be viewed as no more explicit than that in Boll. In its entirety, it reads: "I, the undersigned, hereby, and by these covenants, do waive any and all claims that I, my heirs, and/or assignees may have against Nathaniel Sweet, the Stormville Parachute Center, the Jumpmaster and the Pilot who shall operate the aircraft when used for the purpose of parachute jumping for any personal injuries or property damage that I may sustain or which may arise out of my learning, practicing or actually jumping from an aircraft. I also assume full responsibility for any damage that I may do or cause while participating in this sport”.
Assuming that this language alerted the plaintiff to the dangers inherent in parachute jumping and that he entered into the sport with apprehension of the risks, it does not follow that he was aware of, much less intended to accept, any enhanced exposure to injury occasioned by the carelessness of the very persons on which he depended for his safety. Specifically, the release nowhere expresses any intention to exempt the defendant from liability for injury or property damages which may result from his failure to use due care either in his training methods or in his furnishing safe equipment. Thus, whether on a running reading or a careful analysis, the *110 agreement could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant, to those who participate in such a physically demanding sport.
In short, instead of specifying to prospective students that they would have to abide any consequences attributable to the instructor’s own carelessness, the defendant seems to have preferred the use of opaque terminology rather than suffer the possibility of lower enrollment. But, while, with exceptions not pertinent to this case, the law grudgingly accepts the proposition that men may contract away their liability for negligently caused injuries, they may do so only on the condition that their intention be expressed clearly and in "unequivocal terms” (Van Dyke Prods, v Eastman Kodak Co., 12 NY2d 301, 305, supra).
Accordingly, the certified question is answered in the affirmative, and the order of the Appellate Division reversing the grant of summary judgment, reinstating the complaint and dismissing the defense based on the release should be affirmed.