OPINION OF THE COURT
Harry Michelson, J.
This case presents an issue of apparent first impression. To what extent does the Uniform Commercial Code permit a *715 carrier to limit its own liability for reckless and/or grossly negligent conduct by inserting an exculpatory or liability limitation clause in the bill of lading? The issue arises by way of defendant’s motion pursuant to CPLR 3212 for summary judgment dismissing the plaintiff’s complaint on the ground of accord and satisfaction, or, in the alternative: (a) for partial summary judgment dismissing the negligence claim in the first cause of action, and the contract claim in the second cause of action in the complaint; and (b) limiting the total liability of the defendant, Purolator, to $250.
Plaintiff, Downstate Medical Center, entered into a written agreement whereby defendant, Purolator Courier Corporation, was to transport a computer from plaintiff’s hospital in Brooklyn to a store in Manhattan. The total charge listed on the contract for this service was $20.80. The plaintiff is suing for $4,509, representing the claimed value of the computer which was lost in transit due to claimed negligence and/or recklessness by the defendant. The agreement between the parties, labeled "non-negotiable bill of lading”, states on its face that:
"Sender agrees that unless a greater value of carriage is declared, Purolator’s liability for loss, damage, or non-delivery shall be limited to the actual value of the shipment or two hundred fifty dollars ($250.00), whichever is less.
"Purolator will not be liable for special, incidental, or consequential damages.”
Initially, defendant Purolator contends that there was an accord and satisfaction in this case in that Purolator forwarded a check to Downstate for $250 in "full and final settlement” of plaintiff’s claim, and that Downstate evinced its assent to the agreement by never returning the check. The plaintiff has never negotiated that check, but almost immediately after receipt of the check on August 29, 1986, Downstate commenced this action by service of a summons and complaint upon Purolator. It is clear that Purolator cannot demonstrate as a matter of law from these facts that Downstate intended to acquiesce in the offered settlement. On the contrary, the evidence suggests that Downstate still looked to the defendant for the full value of the computer. Downstate’s intent is a question of fact requiring trial for resolution. (Chesapeake Indus. v Brandt, 137 NYS2d 195, 200.) Accordingly, that part of defendant’s summary judgment motion, based on an accord and satisfaction, is denied.
The key issue to be decided by this court is whether the *716 above-stated limitation of damages clause contained in the bill of lading is enforceable with respect to claims of recklessness or gross negligence and contract claims incorporating those elements. UCC 7-309 addresses the liability of carriers:
"(1) A carrier who issues a bill of lading whether negotiable or non-negotiable must exercise the degree of care in relation to the goods which a reasonably careful man would exercise under like circumstances. This subsection does not repeal or change any law or rule of law which imposes liability upon a common carrier not caused by its negligence.
"(2) Damages may be limited by a provision that the carrier’s liability shall not exceed a value stated, in the document if the carrier’s rates are dependent upon value and the consignor by the carrier’s tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier’s liability for conversion to its own use.”
UCC 7-309 (2) reaffirms well-established New York law that a common carrier can make a valid contract limiting its liability for negligence if the shipper is given a choice of rates depending on the valuation of the goods in question. (National Blouse Corp. v Felson, 274 App Div 164, 166, affd 299 NY 612; D’Utassy v Barrett, 219 NY 420, 424.) When the option is given of declaring a greater value for the goods and paying the higher rate for the additional valuation: "the shipper under the doctrine of estoppel is restricted to recovering the valuation which he has declared, or, if none has been declared, then to the maximum specified in the contract as controlling in the absence of a higher declaration” (National Blouse Corp. v Felson, 274 App Div, supra, at 166-167). The court in the National Blouse case did in fact uphold a limitation clause similar to the one contained in the bill of lading in the instant case.
In addition to the claims of ordinary negligence, Downstate also pleaded that the loss in this case occurred due to the recklessness of Purolator which was defined in the bill of particulars as gross negligence. UCC 7-309 (2) does not explicitly deal with the issue of a carrier’s ability to limit its liability for recklessness or gross negligence. That section specifically mentions only conversion to its own use as a type *717 of liability which cannot be limited through the use of an exculpatory clause in the bill of lading.
The official code commentators to UCC 7-309 state that a common carrier is permitted to limit its liability for loss even where prior law would have made the carrier an insurer of the goods. With a few exceptions to the general rule, in New York common carriers have been insurers of goods which they carry. (Rosenstein v Vogemann, 184 NY 325.) Under pre-UCC New York law, a carrier was able to limit this liability for loss due to ordinary negligence but not for its own affirmative wrongdoing. (D’Utassy v Barrett, 219 NY, supra, at 424.)
New York has a strong public policy against enforcing exculpatory agreements which seek to limit liability for willful or grossly negligent acts. (Gross v Sweet, 49 NY2d 102, 106, citing authorities.) Judge Fuchsberg, writing for the majority of the Court of Appeals in Kalisch-Jarcho, Inc. v City of New York (58 NY2d 377, 385), stated in the same vein that:
"an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing * * * when, as in gross negligence, it betokens a reckless indifference to the rights of others * * *
"the policy which condemns such conduct is so firm that even when * * * it is determined * * * that the conduct sought to be exculpated was within the contemplation of the parties, it will be unenforceable”.
This court holds that UCC 7-309 does not overturn the long-established New York law based on the strong public policy against enforcing clauses which seek to limit liability for gross negligence and/or recklessness. While section 7-309 permits carriers to limit their liability as an insurer of goods shipped, these clauses should only be enforced where they seek to limit liability for negligence and lesser degrees of culpable conduct.
The possibility that defendant, Purolator, was grossly negligent, or reckless is not foreclosed as a matter of law, by the exculpatory or damage limitation clause, nor by any affidavits submitted on this motion. At this point there is a genuine issue of material fact which must be resolved by a trial.
Accordingly, defendant’s motion for summary judgment is granted only the extent of limiting Purolator’s total liability *718 for ordinary negligence to $250. The same limitation applies to the second cause of action in contract to the extent that it is predicated on claimed ordinary negligence as the basis for failure to perform the contract.
The motion for summary judgment is denied in all respects with regard to the claims of recklessness or gross negligence.