OPINION OF THE COURT
Eve Preminger, J.
Defendants move for summary judgment dismissing this *145 dental malpractice action on the ground that a release executed by plaintiff precludes the action.
Defendant New York University College of Dentistry (NYU) operates a dental clinic where, in exchange for reduced fees, patients agree to be treated by students working under faculty supervision. Plaintiff was treated at the clinic for approximately one year beginning in December 1982 by various students including defendants Wisun and Chiha.
Prior to any treatment plaintiff executed a release which reads, in relevant part: "In consideration of the reduced rates given to me by New York University, I hereby release and agree to save harmless New York University, its doctors, and students, from any and all liability arising out of, or in connection with, any injuries or damages which I may sustain while on its premises, or as a result of any treatment in its infirmaries.”
Defendants contend that this release bars plaintiff’s claims against them for malpractice. Plaintiff argues that the release was not intended to relieve defendants from responsibility for their negligent acts, and that to give the release such effect would be against public policy.
The very release involved here has been examined by several New York courts with disparate results.
In Morabito v New York Univ. Dental Center (Sup Ct, NY County, Sept. 8, 1983, Taylor, J., affd 104 AD2d 1064), the court reluctantly held that the release was enforceable, stating that it was constrained to do so on the authority of Fearns v Columbia Univ. (Sup Ct, NY County, App Term, Apr. 11, 1979). Fearns involved a release which was worded considerably stronger in favor of the Columbia University Dental School and, unlike the instant release, specifically exempted the school from liability for negligent acts. The First Department affirmed Morabito, without opinion. (See also, Black v New York Univ., NYU, Mar. 6, 1985, at 6, col 1, which also upheld the validity of the NYU release.)
The most recent case considering the validity of the NYU release is Abromowitz v New York Univ. Dental Center (110 AD2d 343, 345), where the Second Department reversed the granting of summary judgment in favor of NYU, holding that the language of the "purported release” was "legally insufficient to accomplish its intended result”. The court stressed that a release from liability must not only be clear and unambiguous on its face but also must be understandable to the particular patient (110 AD2d, supra, at 345).
*146 In evaluating the weight to be given these conflicting decisions, and in view of the inherent ambiguity of an affirmance, without opinion (Tepper v Tannenbaum, 65 AD2d 359), this court will reexamine the legal principles governing the validity and effect of contracts which attempt to release a doctor or hospital from liability to a patient.
In general, the law frowns upon contracts which seek to exculpate persons from their own negligence (Gross v Sweet, 49 NY2d 102), and to the extent such contracts bar suits against willful or gross negligence, they are void. (Restatement of Contracts § 195; Ciofalo v Tanney Gyms, 10 NY2d 294, 297.) However, where, as here, the claim sought to be foreclosed is one grounded in ordinary negligence, the contract may generally be enforced, but only after being subjected to intense judicial scrutiny on a variety of issues.
The threshold consideration is whether the parties have a special relationship which would make enforcement of an exculpatory clause between them against the public interest. This occurs where the party seeking exculpation is in a business or profession which is either publicly regulated or providing an essential service to members of the public. Examples include common carriers and their passengers (Conklin v Canadian-Colonial Airways, 266 NY 244); public utilities and their customers (Emery v Rochester Tel. Corp., 156 Misc 562, affd 246 App Div 787); employers who impose the clause as a condition of employment and a host of statutorily created prohibited persons, such as landlords, caterers, and those who maintain parking lots, gymnasiums, and other public places. (See, General Obligations Law § 5-321 et seq.)
In these relationships, the consumer’s need for the service creates an inequality in bargaining strength which enables the purveyor to insist upon a release, generally on its own prepared form, as a condition to providing the service. As in any adhesion contract a true and voluntary meeting of the minds on the terms of the agreement is unlikely.
As Williston explains: "[S]ome relationships are such that once entered upon they involve a status requiring of one party greater responsibility than that required of the ordinary person and, therefore, a provision avoiding liability is peculiarly obnoxious.” (15 Williston, Contracts § 1751 [3d ed 1972].)
The courts of this State have not conclusively determined whether it would be against the public interest to allow physicians to insulate themselves from liability for negligence. *147 (Compare, Boll v Sharp & Dohme, 281 App Div 568, 574 [Breitel, J., dissenting], with Colton v New York Hosp., 98 Misc 2d 957; but see, Mynard v Syracuse, Binghamton & N. Y. R. R. Co., 71 NY 180 [1877].) However, other jurisdictions have held that the physician-patient relationship precludes the enforcement of such exculpatory agreements.
Thus, in Olson v Molzen (558 SW2d 429, 430 [Tenn 1977]) the Supreme Court of Tennessee declared that the "general rule [that] a party may contract against his or her own negligence * * * do[es] not afford a satisfactory solution in a case involving a professional person operating in an area of public interest and pursuing a profession subject to licensure by the state. The rules that govern tradesmen in the marketplace are of little relevancy in dealing with professional persons who hold themselves out as experts and whose practice is regulated by the state.” To the same effect are Meiman v Rehabilitation Center (444 SW2d 78 [Ky 1969]), Tunkl v Regents of Univ. of Cal. (60 Cal 2d 92, 383 P2d 441 [1963]), and Smith v Hospital Auth. (160 Ga App 387, 287 SE2d 99 [1981]).
Assuming that the status of the parties withstands scrutiny, it next becomes necessary to examine the actual wording of the agreement. One must determine whether its terms are so clear, explicit and unambiguous that it appears certain that the limitation of liability is intended to cover negligent, as well as ordinary, acts of the party seeking to shed responsibility (Van Dyke Prods. v Eastman Kodak Co., 12 NY2d 301, 304; Gross v Sweet, supra; Boll v Sharpe & Dohme, 281 App Div 568, supra, affd 307 NY 646).
Although the word "negligent” need not actually be used, the Court of Appeals has indicated that such would be the "fairest course” (Gross v Sweet, 49 NY2d, supra, at 108). In those instances where releases from liability which do not contain the word "negligence” have been construed to include negligent behavior, the words used have referred to the concept of fault in specific and unambiguous terms. (See, Theroux v Kedenburg Racing Assn., 50 Misc 2d 97, 99, affd 28 AD2d 960; Fearns v Columbia Univ. School of Dental & Oral Hygiene, supra.)
All-encompassing or open-ended phrases such as "any and all claims” or "any and all responsibility or liability of any nature whatsoever” and "all claims and demands whatsoever” are considered insufficient to indicate an intention to waive injury occasioned by fault. (See, e.g., Gross v Sweet, supra; *148 Hertzog v Harrison Is. Shores, 21 AD2d 859; Boll v Sharpe & Dohme, supra.)
Even if a clause is found to be clear and unambiguous, it must be examined further to determine whether it would be understandable to a layman, which, while not requiring "only * * * monosyllabic language”, does compel that the language used be "clear and coherent”. (Gross v Sweet, supra, at 108.)
The NYU release cannot' survive the close scrutiny mandated by the concepts discussed above. It fails, in all particulars, to meet the established standards. Even if the status of the parties is removed from consideration, the contract cannot be construed to include exemption from negligent acts. There is no reference, either explicitly or implicitly, by "words * ”* * [of] similar .import” (Gross v Sweet, supra, at 108) to the concept of negligence or fault. No layman perusing this release would find it immediately understandable that the signatory had contracted to accept not only injuries that might ordinarily and inevitably occur, but also any and all consequences of defendants’ carelessness.
Although the law grudgingly accepts the proposition that men may contract away their liability for negligently caused injuries (Van Dyke Prods. v Eastman Kodak Co., supra, at 304) it may not do so here. The circumstances of this case and the wording of the release militate against such a result. The parties’ status is, at the very least, suspect, the contract is ambiguous, and the language used is far from instantly coherent to a layman.
For all of the foregoing reasons, defendants’ motion for summary judgment is denied. Although no cross motion was brought by plaintiff the court searches the record (CPLR 3212 [b]) and awards summary judgment dismissing defendants’ affirmative defense based on the release.