EMANUEL CRUZ, Appellant-Respondent, v COMMONWEALTH LAND TITLE INSURANCE COMPANY, Respondent-Appellant, et al., Defendants.

First Department May 24, 1990

APPEARANCES OF COUNSEL

*George Lloyd Platt* for appellant-respondent.

*Joel David Sharrow* of counsel *(Arthur F. Abelman* and *Michael S. Zachary* with him on the brief; *Moses & Singer,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

WALLACH, J.

By deed dated September 30, 1983, and for a price not disclosed in the record, certain real property in Manhattan was transferred to plaintiff by one Elmore Meekins. Present at the closing through an agent, or, as the complaint calls him, a "closer", was defendant Commonwealth Land Title Insurance Company, who had the month before examined Meekins' title, certified it as marketable, and agreed to issue plaintiff its standard form of title insurance policy upon payment of a fee. At the closing, plaintiff paid defendant a fee sufficient to purchase title insurance in the amount of $62,000, and thereafter, it is not clear exactly when, defendant issued plaintiff its standard form of title insurance policy effective as of September 30, 1983. Also at the closing the deed was handed

over to defendant's agent for recordation. This he did four months later, on January 28, 1984.

Meanwhile, one month after the closing, on October 31, 1983, plaintiff entered into a contract to sell the property for $275,000. The contract, however, was canceled when the parties thereto learned that Meekins had conveyed another deed to a Tri-M West Side Development Corp., on December 30, 1983, which deed was recorded on January 10, 1984. Thus, plaintiff found himself, as he puts it, "out of the chain of title" (*see,* Real Property Law § 291). Defendant then retained and paid an attorney to bring an action in plaintiff's name to set aside Tri-M's deed, in the course of which a notice of pendency was filed against the property. Concerning this action, the record indicates only that plaintiff took the position that the deed to Tri-M should be set aside because taken with actual knowledge of the earlier deed Meekins had given to plaintiff, and that it culminated in a judgment upholding Tri-M's title and awarding it $107,000 on a counterclaim it interposed for damages sustained as a result of the filing of the notice of pendency.

Plaintiff then commenced this action, setting forth a first cause of action for breach of contract and a second for negligence, the latter based on defendant's failure to properly perform its obligations as a "closer" by timely filing the deed. Both causes of action sought damages of $500,000, consisting of the $275,000 that plaintiff lost when his contract to sell the property was canceled, the $107,000 liability he incurred in the Tri-M action, the real estate taxes he paid between the date he took title to the property and the date of the judgment dismissing his complaint against Tri-M, and the attorneys' fees he has and will incur in maintaining the instant action. Upon defendant's motion to dismiss the complaint for failure to state a cause of action, IAS dismissed the first cause of action for breach of contract insofar as it sought damages exceeding $62,000, the face amount of the policy, on the ground that defendant's liability "cannot be enlarged by implication beyond the express terms of the contract" (citing *Moshiko, Inc. v Seiger & Smith,* 137 AD2d 170), and dismissed the second cause of action for negligence in its entirety on the ground that it did not allege a violation of a legal duty independent of the contract (citing *Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382). This was, in effect, to determine the controversy, since defendant acknowledges that

it is liable for the face amount of the policy, and has twice offered to pay plaintiff $62,000.

■ We agree with IAS, and defendant, that any cause of action purportedly based on the policy is necessarily limited to its face amount, and we would also note that nowhere does the complaint actually claim a breach of any particular provision of the policy. Obviously, the gravamen of the action is not defendant's failure to indemnify for a defect in title, but its failure to record the deed in timely fashion, a service not expressly mentioned in the policy, but which, defendant explains, it customarily provides to all of its insureds. The theory of the action is quite straightforward—having undertaken to perform this service, defendant was under a duty to perform it with due care, and should be liable for any losses proximately caused by its failure to do so. We find it unnecessary to consider the origin and extent of this duty, since defendant, at least for purposes of the preanswer motion it made to dismiss the action, itself allows, or at least does not challenge, that it did owe plaintiff a duty to record the deed and that the period of time it took to do so was not in conformity with accepted practice in the title insurance industry. Accepting the existence of such a duty, its breach, and a causal relationship between the breach and the defect in plaintiff's title, all defendant would have us decide is that, given a defect in title covered by the policy, it cannot be held liable for more than the face amount of the policy, notwithstanding that the defect was caused by its own negligence, or even gross negligence.

■ This result is said to follow from the combined effect of two clauses in the policy. The first, section 11, entitled "Policy Entire Contract", provides, *inter alia,* that any rights of action that the insured may have against the insurer "in respect of other services rendered in connection with the issuance of this policy, shall be deemed to have merged in and be restricted to its terms and conditions"; the second, section 12, entitled "Validation and Modification", provides, *inter alia,* that "[i]f the recording date of the instruments creating the insured interest [i.e., the deed and other documents to be recorded] is later than the policy date, such policy shall also cover intervening liens or encumbrances, except real estate taxes, assessments, water charges and sewer rents." Characterizing its recording of the deed as one of the "other services" covered by section 11 that was to be merged into the policy terms and conditions, and characterizing the Tri-M deed as an "interven-

ing lien" covered by section 12, defendant would have us conclude that an intervening lien caused by its own negligence in recording the deed is a risk covered by the policy. We reject such a construction of the policy.

Contracts intended to exculpate a party from the consequences of its own negligence are frowned upon by the law and strictly construed against the party seeking exemption from liability *(Gross v Sweet,* 49 NY2d 102). It simply does not appear plainly and precisely from the two clauses invoked by defendant that the policy limit of $62,000 was intended to extend to defendant's performance of a service nowhere expressly mentioned in the policy and at best only vaguely alluded to in the imprecise "other services" language of the policy's merger clause. True, the merger clause of this policy has been construed to bar an action for damages occasioned by a title company's negligence in searching title *(Smirlock Realty Corp. v Title Guar. Co.,* 70 AD2d 455, *mod on other grounds* 52 NY2d 179), but this holding was based on additional contract documents, namely, the certificate of title, evincing a clear intention to merge any negligence in the search into the subsequently issued policy, and also on the common understanding that title insurance is purchased to obtain a financial guarantee, or warranty, that title is good and marketable, not professional advice or an opinion as to its validity, quality or state *(supra,* at 466; *see also, Smirlock Realty Corp. v Title Guar. Co.,* 52 NY2d, *supra,* at 187-188). The point is that if a negligent search causes an insurer to represent that title is when it is not, its liability is in contract, not tort, since the effect of such negligence is not to create a risk of a defect in title but simply to leave undiscovered a risk that already exists. Clearly, the situation is different here; the longer the closer tarried in recording the deed, the greater the risk of a so-called intervening lien. The two clauses invoked by defendant could not possibly have alerted plaintiff, much less do they show that he intended to accept, any *enhanced* exposure to loss occasioned by the carelessness of the very person he was relying on to do whatever was reasonably necessary to prevent an intervening lien from arising *(see, Gross v Sweet, supra,* at 109). Put otherwise, the damages plaintiff allegedly sustained as a consequence of defendant's negligence in recording the deed were not within the contemplation of the policy *(see, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., supra,* at 390), and therefore should not be limited by it.

■ Concerning plaintiff's damages, the argument thus far

mainly has been whether or not his demand for damages is necessarily limited to the face amount of the policy, with little if any attention being given to the particular items of loss recoverable in the event it were decided that his demand is not so limited. We therefore think it best to await rulings from the trial court as to whether the particular items of loss claimed by plaintiff are recoverable. We will say, however, that there is no merit to defendant's argument that the claim based on the liability plaintiff incurred in the Tri-M action for having filed the notice of pendency is premature and may not be entertained until that liability is actually paid by him *(Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465, 470, n 2 ["Of course, a party who has not yet been cast in damages or sustained actual loss may assert an anticipatory claim for common-law or contractual indemnification"]); we will also say that there is no merit to plaintiff's demand for his attorneys' fees in this action *(Hooper Assocs. v AGS Computers,* 74 NY2d 487).

■ Finally, we agree with IAS that "the summons contains sufficient information regarding the nature of the action and the relief sought", and find no merit to defendant's cross appeal from so much of IAS's order as denied its motion to dismiss the action for lack of jurisdiction on the ground that the summons did not contain the information required by CPLR 305 (b) *(see, Premo v Cornell,* 71 AD2d 223 [failure to include in the summons the amount of damages demanded is not a jurisdictional defect but an amendable irregularity]).

Accordingly, the order of the Supreme Court, New York County (Myriam J. Altman, J.), entered June 14, 1989, which, *inter alia,* dismissed the second cause of action for negligence and reduced the ad damnum clause of the first cause of action for breach of contract to a maximum of $62,000, should be modified, on the law, to reinstate the second cause of action for negligence, except insofar as it seeks attorneys' fees, and otherwise affirmed, without costs.

KUPFERMAN, J. P., ROSS, ASCH and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 14, 1989, unanimously modified, on the law, to reinstate the second cause of action for negligence, except insofar as it seeks attorneys' fees, and otherwise affirmed, without costs and without disbursements.