Affirmed and Memorandum Opinion filed May 4, 2004









Affirmed
and Memorandum Opinion filed May 4, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00450-CV

____________

 

COMBUSTION
ENGINEERING, INC., Appellant

 

V.

 

BAKER HUGHES
INCORPORATED,
Appellee

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 02-40689

 



 

M E M O R A N D U M   O P I N I O N

In this appeal, Combustion Engineering,
Inc. seeks contractual indemnification from Baker Hughes Incorporated for
settlement amounts Combustion paid to third parties who filed a wrongful death
lawsuit against it, alleging gross negligence by a former Combustion subsidiary
acquired by Baker Hughes pursuant to a 1989 stock purchase agreement (AStock Purchase
Agreement@). 
The trial court granted summary judgment in favor of Baker Hughes,
finding that, under New York law, it does not owe Combustion defense or
indemnity for the third-party settlement. 
We affirm the trial court=s judgment.








Factual and Procedural Background

In 1989, Combustion sold certain
companies, including Vetco Services, Inc., to Baker Hughes as part of a Stock
Purchase Agreement effective February 18, 1989. 
In 2001, the Figueroa family filed a wrongful death suit against a
number of defendants, including Vetco Services, alleging gross negligence by
Vetco Services while it was owned by Combustion that resulted in the death of
Polito Figueroa.  In July 2002,
Combustion sent a letter requesting Baker Hughes to indemnify and defend Vetco
Services, Combustion, and ABB Veto Gray, Inc. 
The letter states that AWe [Combustion=s counsel] direct
your attention to (but do not limit our demand) to the following provisions in
the enclosed [Stock Purchase Agreement]: Section [sic] 5.6(a), 5.6(b), and
5.14.@  Combustion=s counsel also
said, AIf proved, a claim
of gross negligence brought pursuant to the Texas Constitution allows for the
recovery of exemplary damages only.@

Baker Hughes subsequently filed this suit,
seeking a declaration that it has no defense or indemnity obligation to
Combustion for the Figueroa claims. 
Combustion filed a counterclaim, raising the same issues as Baker Hughes=s declaratory
judgment action and contending that Baker Hughes owed Combustion indemnity and
defense for the Figueroa lawsuit.  Baker
Hughes filed a motion for summary judgment, asserting three grounds:  (1) section 5.6 of the Stock Purchase
Agreement does not provide for defense or indemnification of the Figueroa
claims; (2) indemnification for grossly negligent conduct and punitive damages
is prohibited under New York law; and (3) the Stock Purchase Agreement does not
exculpate Combustion for its own negligence. 
The trial court granted Baker Hughes=s motion.  In its final judgment, the trial court made
the following three findings:  A(i) New York law
prohibits indemnity agreements for exemplary damages; (ii) the parties= Stock Purchase
Agreement, dated February 18, 1989, does not cover the claims asserted in the
lawsuit referenced herein, and (iii) said agreement does not evidence on its
face the parties= intent to indemnify [Combustion] for its
own acts of negligence, and Baker Hughes Incorporated, therefore, owes no
defense or indemnity to any of the defendants in [the Figueroa lawsuit].@








In this appeal, Combustion argues the trial court erred in
granting summary judgment and presents the following four issues for our
review:

(1)     New
York law allows contracting parties to indemnify for exemplary damages
resulting from gross negligence for events that occur prior to the
indemnity agreement.  Accordingly, did
the trial court err in ruling that New York law prohibits indemnity agreements
for exemplary damages without noting this exception?

(2)     Is
the trial court=s ruling that the pertinent provision
of the Stock Purchase Agreement does not Acover@ the Figueroa claims in error based
on the plain language of the agreement? 

(3)     Is
the trial court=s ruling that the agreement does
not evidence the parties= intent to indemnify Combustion for
its own negligence in error because New York courts have upheld similar clauses
as providing indemnity for a party=s own negligence?

(4)     Was
summary judgment improperly granted because the trial court did not consider
the applicability of section 5.14 of the Stock Purchase Agreement, which
requires Baker Hughes reimburse Combustion=s expenditures for deductibles, co-payments, or other
out-of-pocket costs incurred before execution of the Agreement?

 

Standard of Review

As the plaintiff and summary-judgment movant, Baker Hughes
was required, as a matter of law, to prove all elements of its claim and
disprove one element of Combustion=s
counterclaim.  See Park Place
Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 (Tex. 1995).  We take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the
nonmovant=s favor. 
Limestone Prods. Distr. v. McNamara, 71 S.W.3d 308, 311 (Tex.
2002).  In this case, the trial court=s order specified
the grounds upon which it was granting summary judgment.  We consider all summary judgment grounds the
trial court ruled on and the movant preserved that are necessary for final
disposition of the appeal.  Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996).  In the interest of judicial economy, we also
have the discretion to consider other grounds the movant preserved for review
and on which the trial court did not rule. 
Id.








                                                        Analysis

Combustion contends the language of section 5.6 of the
Stock Purchase Agreement provides indemnity to it for Aall liabilities,@ whenever they
happen and that it evidences the parties= Aunmistakable
intent@ that Baker Hughes
should indemnify Combustion for its own negligence.  We disagree.

Article 5 of the Stock Purchase Agreement is titled ACOVENANTS.@  In contrast, Article 8 of the agreement is
titled AINDEMNIFICATION
AND REIMBURSEMENT.@ 
Section 5.6 of the Stock Purchase Agreement reads in its entirety as
follows:

5.6     Seller=s Obligations. 
(a) After the Closing, Buyer shall be substituted for Seller and its
subsidiaries and affiliates that are not constituents of the Business on the
agreements, obligations and liabilities in respect of the Business which are
obligations of Seller and its subsidiaries and affiliates that are not
constituents of the Business, in each case so that Seller and its subsidiaries
and affiliates that are not constituents of the Business are relieved of all
liability with respect to such agreements, obligations and liabilities, provided,
however, that nothing in the foregoing shall require Buyer or allow
Seller to amend the terms of any obligation of the Business in any way to
provide for less favorable terms either to the Business or to any other obligor
thereof.  To the extent that Buyer is not
substituted for Seller and such subsidiaries and affiliates on (and the failure
to be so substituted despite Buyer=s best efforts to do so shall not be a breach), or Seller
and such subsidiaries and affiliates are not relieved of, such agreements,
obligations and liabilities, Buyer shall hold Seller and such subsidiaries and
affiliates harmless in respect of such matters, including reimbursing them for
all costs and expenses (including reasonable legal fees and disbursements) of
paying, discharging, and defending such agreements, obligations and liabilities
and, where appropriate, entering into agreements with appropriate parties which
shall provide that Buyer shall be obligated or liable to such parties to the
same extent as Seller or any such subsidiary or affiliate is obligated or
liable.








New York courts require an indemnification
agreement to unambiguously set forth the parties= Aunmistakable
intent@ to indemnify an
indemnitee for its own acts of negligence.[1]  See, e.g., Quinones v. Waldbaum=s Inc., 469 N.Y.S.2d
743, 743 (App. Div. 1983) (AAgreements that
would exculpate one from the consequences of his own negligence are strictly
construed against him who would be exculpated, and, while less precise or less
explicit language may suffice for indemnity agreements between businessmen
dealing at arm=s length, even they must express the >unmistakable
intent of the parties.=@) (quoting Gross
v. Sweet, 400 N.E.2d 306, 310 (N.Y. 1979)); Commander Oil Corp. v.
Advance Food Serv. Equip., 991 F.2d 49, 51 (2d Cir. 1993) (applying New
York law) (A[I]n New York indemnification agreements
are strictly construed; a court cannot find a duty to indemnify absent
manifestation of a >clear and unmistakable= intent to
indemnify.@) (citing Heimbach v. Metro. Transp. Auth.,
553 N.E.2d 242, 246 (N.Y. 1990)). 
Although the use of the word Anegligence@ is not mandated
under New York law, Awords conveying a similar import must
appear.@  Gross, 400 N.E.2d at 309; see also
id. (ASo, it has been repeatedly emphasized that
unless the intention of the parties is expressed in unmistakable language, an
exculpatory clause will not be deemed to insulate a party from liability for
his own negligent acts.@). 
The intention to indemnify the indemnitee for its own negligence must be
Aimplied from the
language and purposes of the entire agreements, and the surrounding facts and
circumstances.@  Margolin
v. New York Life Ins. Co., 344 N.Y.S.2d 336, 339 (App. Div. 1972).








Section 5.6 does not reflect the parties= unmistakable
intent to indemnify the other for its own negligence.  To the contrary, giving section 5.6 its plain
meaning, it is not an indemnity provision.  By using the phrase Aare obligations,@ the provision
instead requires Baker Hughes to assume the existing contractual
liabilities of Combustion and otherwise Astep into the
shoes@ of Combustion
with respect to certain existing obligations.  Section 5.6 is very different than indemnity
provisions that courts applying New York law have found to be sufficiently
broad to require indemnification of a party for its own negligence.  See, e.g., Margolin, 344 N.Y.S.2d at
339 (concluding that indemnity provision stating that Acontractor hereby
assumes entire responsibility and liability for any and all damage or injury of
any kind or nature to persons . . ., and to property . . ., and agrees to
indemnify and save harmless the owner . . . from and against any and all
claims, liability, loss, expense, damage or injury . . .@ evidenced parties= unequivocal
intention to have the contractor assume the entire risk of any liability
arising from its work); Olin Corp. v. Consol. Alum. Corp., 5 F.3d 10, 12B13 (2d Cir. 1993)
(applying New York law) (concluding that agreement=s provision
stating that buyer would agree Ato be responsible
for and to pay, perform, discharge and indemnify [seller] against, [sic] all
liabilities (absolute or contingent), obligations and indebtedness of [seller]
related to the [assets acquired by buyer] as they exist on the Effective Time
or arise thereafter with respect to actions or failures to act occurring prior
to the Effective Time@ evidenced the parties= Aclear and
unmistakable intent@ that the buyer would indemnify the seller
for future unknown liabilities).








This conclusion is supported by comparing
the terminology of section 5.6 to other sections in the agreement.  It is a well-established rule of contract
construction that A[a]ll parts of a contract must be read in
harmony to determine its meaning.@  In re Bombay Realty Corp. v. Magna Carta,
Inc., 790 N.E.2d 1163, 1165 (N.Y. 2003) (citation omitted).  A[O]ne term should
not be interpreted in a vacuum.@  The Vermont Teddy Bear Co., Inc. v. 538
Madison Realty Co., 761 N.Y.S.2d 620, 623 (App. Div. 2003) (citation
omitted).  In the instant case, sections
8.2 (AIndemnity.@), 8.5 (AAdditional
Indemnification by Seller.@), and 8.6 (AThird Party Claims.@) of the agreement[2]
all deal with indemnity rights and obligations and reflect the parties= ability to draft
indemnification provisions with such key terms as Aindemnify@ and Ahold harmless,@ words that do not
appear in section 5.6 at all.  The trial
court=s conclusion that
the plain language of section 5.6 of the Stock Purchase Agreement does not
require Baker Hughes to defend and indemnify Combustion for the Figueroa
settlement is proper.  Accordingly,
Combustion=s second and third issues are overruled.

In its fourth
issue, Combustion contends the trial court failed to address the applicability
of section 5.14 of the Stock Purchase Agreement to Combustion=s request for
defense and indemnity.

Section 5.14 (AInsurance.@) provides as
follows:

The parties
recognize that Seller [Combustion] has obtained various insurance policies (the
>Policies=) from carriers
(the >Carriers=) providing
insurance coverage for business conducted by the Seller, its subsidiaries and
companies associated therewith.  The
parties also recognize that included in the assets and liabilities of the
Business are applicable rights and obligations under existing Policies arranged
for by Seller in respect of the Business (including the insured=s right to defense
and indemnity by the Carrier, the insured=s duty to give
notice and cooperate and the insured=s liability for
deductible amounts, defense costs, premiums and administrative fees) and that,
to the extent so provided under the terms and conditions of individual
Policies, certain elements of such insurance coverages for periods prior to
sale of the Shares to Buyer may survive thereafter for the benefit of the
Business and the Buyer.  In the event
that subsequent to the date hereof Seller shall pay to or receive from a
Carrier an amount required to be paid or credited under a Policy with respect
to or relating to any claim or other insured matter in respect of the Business,
then forthwith upon Seller=s making of such
payment or receipt of such credit, Buyer shall make equivalent payment to, or
receive equivalent credit from, Seller.         








The trial court=s failure to
specifically refer to section 5.14 is not relevant to our analysis.  The court=s finding that the
Stock Purchase Agreement Adoes not cover the claims asserted in the
[Figueroa lawsuit]@ is sufficient to reflect the trial court
considered and rejected Combustion=s argument
regarding the applicability of section 5.14. 
As Baker Hughes noted in its motion for summary judgment, section 5.14
allows Baker Hughes to avail itself of the benefits of any Combustion insurance
policies existing at the time of the Stock Purchase Agreement.  Section 5.14, however, does not address
either indemnification or defense for third-party claims.  Construing section 5.14 in accordance with
its plain and ordinary meaning, it is not an indemnification provision.  See generally, e.g., Edwards v.
Poulmentis, 763 N.Y.S.2d 677, 679 (App. Div. 2003) (AWhere the
provisions of a contract are clear and unambiguous and the intent of the
parties can be gleaned from the four corners of the document, a court should
interpret the contract in accordance with its plain and ordinary meaning.@) (citation
omitted).  Accordingly, we overrule
Combustion=s fourth issue.[3]

The trial court=s judgment is
affirmed.

 

/s/      Leslie
Brock Yates

Justice

 

 

Judgment rendered
and Memorandum Opinion filed May 4, 2004.

Panel consists of
Justices Yates, Anderson, and Hudson.











[1]  Neither party contests that the
choice-of-law provision of the Stock Purchase Agreement dictates that we must
construe the pertinent provisions of the agreement under New York law.





[2]  Section 8.2 of
the agreement reads in its entirety as follows:

 

Each party hereto shall indemnify and hold the other
party hereto harmless, subject to the terms and conditions and to the extent
provided in this Article 8, from and against all losses, damages, liabilities,
claims, demands, judgments, settlements, costs and expenses (including reasonable
attorneys= fees) resulting from or arising out of (i) any breach
of any representation or warranty of the indemnifying party contained in
Article 3 or 4, as the case may be, or (ii) any breach of or failure to comply
with any covenant or agreement of the indemnifying party contained in Article
5, as the case may be, in either case to the extent not waived by the
indemnified party.  This Section 8.2
shall constitute the exclusive remedy after the Closing Date for any breach of
any representation or warranty hereunder or any claim for misrepresentation in
connection with this Agreement.

 

Section
8.4 provides that, in addition to the indemnification provided for in section
8.2, ASeller shall indemnify and hold Buyer harmless from
and against all Environmental Remediation Costs actually incurred by Buyer
prior to the second anniversary of the Closing Date with respect to real
property owned or leased by the Business as of the Closing Date. . . .@  Section 8.5
reads, in relevant part, as follows:

 

(a) In the event that any legal proceedings shall be
instituted or any claim or demand shall be asserted by any person in respect of
which payment may be sought by any party or parties from any other party or
parties under the provisions of Section 8.2, the party or parties seeking
indemnification (collectively, the >Indemnitee=) shall cause written notice of the assertion of any
claim of which it has knowledge that is covered by this indemnity to be
forwarded promptly to the party or parties from which indemnification is sought
(collectively, the >Indemnitor=) . . .
.

 





[3]  Because of our disposition of
Combustion=s second and third issues, we need
not address Combustion=s first issue of whether New York
law prohibits indemnification for gross negligence or prohibits indemnification
for exemplary damages in all cases.  Further, because of our disposition of
Combustion=s fourth issue, we also do not address Baker Hughes=s argument that there is no evidence in the record
that Combustion incurred any expenses under any liability insurance contracts.