Eliana **APPLBAUM** an Infant, by her Mother and Natural Guardian, Linda Applbaum; and Linda Applbaum, Individually, Plaintiff,

v.

**GOLDEN ACRES FARM AND RANCH; Golden Acres Farm; Farm Resorts, Inc.; Jerome J. Gauthier; and "Andre," as known by the Plaintiffs, Defendants.**

No. 1:02–CV–467.

United States District Court, N.D. New York.

Aug. 11, 2004.

Fink & Platz, Attorneys for Plaintiffs, New York City, Steven M. Finks, Esq.

Roemer, Wallens & Mineaux, LLP, Attorney for Defendants, Albany, NY, Matthew J. Kelly, Esq., of Counsel.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Eliana Applbaum ("Eliana"), an infant at the time of the incident, and her mother and natural guardian, Linda Applbaum, bring this suit against Golden Acres Farm and Ranch; Golden Acres Farm; Farm Resorts, Inc. (collectively "Golden Acres"); Jerome J. Gauthier ("Gauthier"); and "Andre," as known by the plaintiffs. · Defendants move for summary judgment on the basis of assumption of the risk. Plaintiffs oppose. In reply, defendants argue for the first time that a release signed by Eliana's father absolves Golden Acres from liability. Oral argument was heard on February 27, 2004, in Utica, New York. Decision was reserved.

Plaintiffs filed a sur-reply following oral argument with the court's permission to address the waiver of liability issue raised by defendants in reply.

## II. FACTS

Eliana, then nine years old, and her family went on vacation to Golden Acres premises located at Gilboa, New York, in July of 2000. Eliana's father signed what he believed to be a stable sign-in sheet two days before Eliana was injured while horseback riding. The document was titled "Stable Arrival List 7/24/2000" and other guests' names and signatures were listed on the form. The document also purported to hold Golden Acres "harmless from every and all claim which may arise from injury, which might occur from use of said horse and/or equipment." (Kelly Aff. Ex. D.) Eliana had gone on at least one walk and trot trail ride in 2000 before the day of the incident, and had taken a couple of riding lessons the previous summer.

On July 26, 2000, Eliana and her father went on a private horseback ride at Golden Acres. They were accompanied by Andre, an eighteen year old "wrangler." He had been trained at Golden Acres prior to the summer season, but was not certified. Eliana rode Pixie, a large pony. After about fifty minutes of riding, as the group was crossing a meadow on the approach to the bam, Andre moved out of the lead position to stop to dose a gate, telling Eliana to proceed. Pixie bolted and began to trot. Eliana screamed and tried to pull the reins to stop Pixie, to no avail. She fell from the horse. Pixie then circled around and stepped on Eliana's thigh.

Eliana was seriously injured, requiring a body cast for a period of time. She was out of school until Thanksgiving, and used crutches thereafter. The injuries have apparently left her with some permanent residuals.

## III. *MOTION FOR SUMMARY JUDGMENT STANDARD*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d. Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

## IV. *DISCUSSION*

### A. *Implied Assumption of the Risk*

Defendants contend that horseback riding is inherently dangerous, at least in part because of the unpredictable movements of these large creatures. While plaintiffs do not really dispute this, they contend that defendants were negligent in creating a dangerous condition that exceeded the usual dangers that are inherent in horseback riding.

"[I]n assessing whether a defendant has violated a duty of care within the genre of tort-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants' negligence are 'unique and created a dangerous condition over and above the usual dangers that are inherent in the sport.'" *Morgan v. State of New York*, 90 N.Y.2d 471, 485, 662 N.Y.S.2d 421, 685 N.E.2d 202 (1997) (quoting *Owen v. R.J.S. Safety Equip.*, 79 N.Y.2d 967, 970, 582 N.Y.S.2d 998, 591 N.E.2d 1184 (1992)). A "showing [of] some negligent act or inaction, referenced to the applicable duty of care owed to him by [the] defendants, which may be said to constitute 'a substantial cause of the events which produced the injury'" is necessary. *Benitez v. New York City Bd. of Educ.*, 73 N.Y.2d 650, 659, 543 N.Y.S.2d 29, 541 N.E.2d 29 (1989) (internal citations omitted) (quoting *Derdiarian v. Felix Contr. Co.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980)).

Plaintiffs argue, and submit an expert's affidavit in support, that defendants' failure to follow customary practices as set forth by various horseman's associations created a dangerous condition over and above the usual dangers that are inherent in horseback riding. For example, their expert Robert S. Lipka opines that the horse Pixie was three at the time of the incident, too young for riding by youngsters. Also, he contends that the minimum age for lessons is ten; trail guides should be eighteen or older and certified; instructors should be twenty-one or older and certified; two guides, one front and one rear, should be present on all rides; Eliana's training was deficient in that she was not taught an emergency stop; use of a lead line on her horse would have permitted Andre to stop Pixie when she bolted; and Eliana had insufficient experience to trot. Defendants cite from the same authorities cited by plaintiffs to point out how there is no issue for trial. For example, in discussing the age of ten for taking lessons, the authority specifically states that the age is only a guideline and it is purely discretionary at what age lessons could begin.

■ In an implied assumption of the risk analysis, horseback riding is an inherently dangerous activity for which plaintiff impliedly assumed the risk. However, given plaintiffs' expert's opinion that these deviations from "standard operating procedure" increased the risk beyond that which was foreseeable and that this increased risk proximately caused Eliana's injuries, a question of fact has been created. Defendants' citation to the same authority for opposing assertions highlights the fact that genuine issues remain for trial. Therefore, summary judgment based on implied assumption of risk is not appropriate.

## B. *Primary (Express) Assumption of the Risk*

As noted above, in reply, for the first time defendants raise the defense of primary (express) assumption of the risk, based upon Eliana's father signing the release that purports to hold Golden Acres free from liability for every and all claims which may arise from injury. Plaintiffs argue to the contrary that the release is invalid and does not absolve Golden Acres from liability.

■ It is well established that "the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence and though, with certain exception, they are enforceable, such agreements are subject to close judicial scrutiny." *Gross v. Sweet*, 49 N.Y.2d 102, 106, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979). In order for a release from liability to be valid, the text of the release must be explicit in its terms. *Id.* at 107, 424 N.Y.S.2d 365, 400 N.E.2d 306. Where the language of a release expresses the clear and unequivocal intent of the parties to absolve the defendant from liability, primary assumption of the risk applies and any recovery is barred. *Id.* An amorphous "any and all" clause does not "exact the

release of liability of a drafter's own negligent conduct." *Id.* at 108–09, 424 N.Y.S.2d 365, 400 N.E.2d 306.

■ The purported release signed by Eliana's father stated that he would agree to hold Golden Acres "harmless from every and all claim which may arise from injury, which might occur from use of said horse and/or equipment ...." (Doc. No. 31-6, Kelly Aff. Ex. D). Such a broad "any and all" clause does not shield Golden Acres from its own negligent conduct. *See Sweet*, 49 N.Y.2d at 108–09, 424 N.Y.S.2d 365, 400 N.E.2d 306. Assuming that the release Eliana's father signed alerted him of the inherent dangers of horseback riding "and that he entered into the sport with apprehension of the risks, it does not follow that he was aware of, much less intended to accept, any *enhanced* exposure to injury occasioned by the carelessness of the very persons on which he depended for his safety." *See id.* at 109, 424 N.Y.S.2d 365, 400 N.E.2d 306.

Additionally, the heading on the release, "Stable Arrival List 07/24/2000;" the fact that several other guests' names and signatures appear on the form; and Eliana's father signing the release two days before the incident occurred, provide further support that he was not aware that the release was intended to hold defendants free from liability. Clearly, he was under the impression that this document was merely a sign-in sheet for visitors interested in riding the horses, and not a clear and unequivocal release which would shield Golden Acres from liability. In fact, Golden Acres did everything to create that impression or assumption by all guests.

Defendants also argue that although N.Y. General Obligations Law § 5–326 voids releases by recreational premises, this is not applicable to cases where, as here, the purpose was instructional. Plaintiffs argue to the contrary, that Elia-

na's horseback riding must be considered recreational in this case, thereby voiding the release.

As is evidenced by the instant case, "[d]ifficulties arise in this area of law in situations where a person is injured at a mixed-use facility, namely, one which provides both recreation and instruction." *Lemoine v. Cornell Univ.*, 2 A.D.3d 1017, 1019, 769 N.Y.S.2d 313 (3d Dep't 2003). "In assessing whether a facility is instructional or recreational, courts have examined, *inter alia,* the organization's name, its certificate of incorporation, its statement of purpose and whether the money it charges is tuition or a fee for use of the facility." *Id.* A second test may be applied where some "courts have found that General Obligations Law § 5-326 voids the particular release where the facility provides instruction only as an 'ancillary' function,' even though it is a situation where the injury occurs while receiving some instruction." *Id.; see, e.g., Bacchiocchi v. Ranch Parachute Club*, 273 A.D.2d 173, 175-76, 710 N.Y.S.2d 54 (1st Dep't 2000); *Wurzer v. Seneca Sport Parachute Club*, 66 A.D.2d 1002, 1002-03, 411 N.Y.S.2d 763 (4th Dep't 1978). Lastly, a third test may be used in mixed-uses cases where "courts focused less on a facility's ostensible purpose and more on whether the person was at the facility for the purpose of receiving instruction." *Cornell Univ.*, 2 A.D.3d at 1019, 769 N.Y.S.2d 313; *Scrivener v. Sky's the Limit*, 68 F.Supp.2d 277, 281 (S.D.N.Y. 1999).

If the first test is applied, it is clear that defendants' facility is named 'Golden Acre Farm & Ranch' and is not called an equestrian riding academy, school or instructional facility. Horseback trail rides and lessons are only one optional aspect of the recreational activities available at Golden Acres. Golden Acre Farm & Ranch is a vacation destination for families, and not a horseback riding instructional facility. Golden Acres' certificate of incorporation further supports this conclusion. It does not mention horse riding instruction or training, but only states that the resort would "operate and maintain stables, swimming facilities, ... restaurants, recreational and entertainment facilities ...." (Pls.' Sur-reply Ex. B, Certif. of Inc.) The purpose of Golden Acres was "[t]o provide health programs, entertainment, recreation, and to employ entertainers, lecturers, present plays, dances and amusements of all kinds and descriptions ...." *Id.* Thus, examining Golden Acres' name, certificate of incorporation, and statement of purpose all indicate that it is not an instructional facility, but rather a vacation resort for families where Eliana's horseback riding constituted one of many recreational activities.

Furthermore, General Obligations Law § 5-326 voids the waiver Eliana's father signed because Golden Acres provides instruction as an "ancillary function." Again, Golden Acres is not an instructional school, but rather a vacation resort that provides horseback riding as one of the many forms of entertainment offered to the guests. Therefore, Eliana's activity at the time of the incident, while the injury may have occurred while receiving some instruction, must be considered recreational because Golden Acres provides instruction as an ancillary function, and General Obligations Law § 5-326 voids the release signed for recreational activity.

If the third test of whether the person was at the facility for the purpose of receiving instruction is applied, it is clear that Eliana was not at Golden Acres for the purpose of receiving horseback riding instructions. Eliana was on a summer vacation with her family and took advantage of one of the many forms of entertainment that Golden Acres provided to its

guests. Therefore, Eliana's "horseback riding lesson" taken at Golden Acres is considered a recreational, as opposed to an instructional, activity and General Obligations Law § 5–326 voids the release signed by her father.

In summary, the purported release does not clearly and unequivocally indicate an intention to absolve defendants from liability. Further, Golden Acres must be considered a recreational facility under any of the three tests, and any purported waiver of liability is void pursuant to General Obligations Law § 5–326. Therefore, defendants' affirmative defense that plaintiffs signed a valid release from liability must be dismissed.

## V. CONCLUSION

Given plaintiffs' expert's opinion that Golden Acres' deviations from "standard operating procedure" increased the risk of horseback riding beyond that which was foreseeable and that this increased risk proximately caused Eliana's injuries, a question of fact remains. Summary judgment based on *implied* assumption of risk defense is not appropriate.

The signing by Eliana's father of the "Stable Arrival List 7/24/2000" does not relieve defendants of liability. The purported release is void and the *express* assumption of risk defense fails as a matter of law.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is DENIED; and

2. Defendants' affirmative defense of a valid release (express assumption of the risk) is STRICKEN.

IT IS SO ORDERED.