NIAGARA FRONTIER TRANSPORTATION AUTHORITY et al., Respondents, v TRI-DELTA CONSTRUCTION CORPORATION et al., Appellants, and GENERAL ELECTRIC CREDIT CORPORATION, Respondent.

Fourth Department, April 5, 1985

### APPEARANCES OF COUNSEL

*Damon & Morey (Thomas J. Drury* and *George M. Gibson* of counsel), for appellants.

*Barth, Sullivan & Lancaster (John J. Sullivan, Jr.,* of counsel), for Niagara Frontier Transportation Authority and another, respondents.

*Brown, Kelly, Turner, Hassett & Leach* for General Electric Credit Corporation, respondent.

## OPINION OF THE COURT

DENMAN, J.

On November 12, 1976 a commercial aircraft operated by Allegheny Airlines and owned by General Electric Credit Corporation (General Electric) taxied into a construction excavation site after landing at the Greater Buffalo International Airport and incurred substantial damage in the claimed amount of $508,499.62. General Electric commenced a negligence action against the Niagara Frontier Transportation Authority (NFTA), the operator of the airport, for negligence in scheduling the excavation work; in failing properly to illuminate, flag, barricade, ramp or steel-plate the excavation area; in failing to notify the aircraft crew and the Federal Aviation Administration of the location of the excavation; and in permitting the aircraft to be brought into close proximity to the excavation without guiding the aircraft around the site.

This appeal arises in a declaratory judgment action which NFTA commenced against Tri-Delta Construction Corporation (Tri-Delta), the contractor engaged in the excavation work, and its insurer, Michigan Mutual Insurance Company. The issue to be decided is whether an indemnification clause in the contract between Tri-Delta and NFTA requires Tri-Delta to indemnify and hold harmless NFTA and to reimburse it for costs and expenses in the underlying action by General Electric. Special Term granted summary judgment declaring that Tri-Delta has a contractual obligation to indemnify plaintiff against the claims and demands asserted against it as well as to pay necessary costs of the litigation.

It is well settled that "the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence and though, with certain exceptions, they are enforceable, such agreements are subject to close judicial scrutiny (*Van Dyke Prods. v Eastman Kodak Co.,* 12 NY2d 301, 304; 4 Williston, Contracts [3d Jaeger ed], § 602A, pp 326, 332)" (*Gross v Sweet,* 49 NY2d 102, 106). Thus, a clause will not be held to insulate a party from liability for his own negligence unless such intention is expressed in unequivocal terms (*Gross v Sweet, supra,* p 107). Where, as here, the indemnification agreement has been "negotiated at arm's length between * * * sophisticated business entities," the intent being to allocate "the risk of liability to third parties between themselves, essentially through the employment of insurance", the rule has been somewhat liberalized (*Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 158, 161).

In such circumstances it is not necessary that the exculpatory language refer expressly to the negligence of the indemnitee, so long as the intention to indemnify can be "clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances" (*Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153).

The indemnification clause here provides in pertinent part: "the Contractor further agrees to properly guard and protect all openings and obstructions in the public streets and thoroughfares made or caused in the performance of this Contract, and to indemnify and save harmless the [NFTA] * * * against all loss and damage, claims and demands, costs and charges for injuries to person or property, or other cause that may arise or accrue out of the performance of this Contract, or any violation of the conditions and covenants of the same, or violation of the Specifications, or which may be caused by any negligence or default whatever of the Contractor, his agents or servants." The clause expressly provides that Tri-Delta has the duty to protect against accidents at the excavation site and to indemnify NFTA for "all loss and damage" arising out of performance of the contract. Thus, it is clear that between these two business entities, the risk of liability to a third party arising out of the construction work performed under the contract has been allocated to Tri-Delta.

Similar provisions have been held to require indemnification even where the negligent conduct of the indemnified party has been responsible, in whole or in part, for the injury (*see, L. B. Smith, Inc. v Bradley & Williams*, 58 NY2d 672; *Hogeland v Sibley, Lindsay & Curr Co.*, 42 NY2d 153, *supra; Margolin v New York Life Ins. Co.*, 32 NY2d 149, *supra*). Thus, Special Term was correct in holding that the language here expresses the unmistakable intent of the parties that Tri-Delta indemnify NFTA, regardless of the latter's negligence, for damages arising out of the performance of the contract.

There is merit, however, to Tri-Delta's argument that General Electric's complaint, as amplified by the bill of particulars, asserts several claims of negligence with respect to the manner in which NFTA operated the airport which are not within the contemplation of the indemnity agreement. In addition to allegations that the NFTA was negligent in scheduling and supervising the work, and in safeguarding and illuminating the excavation site, General Electric alleges negligence in NFTA's failure to notify the aircraft crew and the Federal Aviation Administration of the presence of the excavation site and in its

failure to give proper instructions regarding runway and taxiway procedures in view of the danger created by the excavation.

In the event that NFTA is ultimately found liable on the latter claims, such liability would be attributable to a breach of duty to operate the airport safely, a duty independent of its obligations under the construction contract. The language of an indemnity provision should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties. It should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract (42 CJS, Indemnity, § 12 [a], at 579; *see also, Sutro Bros. & Co. v Indemnity Ins. Co.,* 264 F Supp 273, 290, *affd* 386 F2d 798). There is nothing in the language, purpose or surrounding facts and circumstances of this indemnity agreement to indicate that the parties intended to encompass within its purview NFTA's negligence in the operation of the airport (*see, Grumman Am. Aviation Corp. v International Business Machs. Corp.,* 77 AD2d 582, 585).

Accordingly, the order and judgment should be modified to declare that Tri-Delta is not obligated to indemnify and hold harmless NFTA for damages arising out of its operation of the airport, specifically, for its alleged failure to notify the aircraft crew and the Federal Aviation Administration as to the presence of the excavation and to instruct the crew regarding runway and taxiway procedures in light of the danger posed by the construction work.

CALLAHAN, J. P., DOERR and O'DONNELL, JJ., concur.

Order and judgment unanimously modified, on the law, and as modified, affirmed, with costs to defendant Tri-Delta Construction Corporation, in accordance with opinion by DENMAN, J.