Barry & Sons, Inc. v Instinct Prods. LLC (2004 NY Slip Op 24261)

Barry & Sons, Inc. v Instinct Prods. LLC

2004 NY Slip Op 24261 [5 Misc 3d 172]

May 24, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 3, 2004

[*1]
Barry & Sons, Inc., Doing Business as Blackground Records, Plaintiff,
v
Instinct Productions LLC et al., Defendants.
Supreme Court, New York County, May 24, 2004

APPEARANCES OF COUNSEL

Brown, Gavalas & Fromm, LLP, New York City (David H. Fromm of counsel), for Instinct Productions LLC, defendant. Stewart, Occhipinti & Makow, LLP, New York City (Edward G. Williams of counsel), for plaintiff.

{**5 Misc 3d at 173} OPINION OF THE COURT

Carol R. Edmead, J.
In this action for a declaratory judgment and for negligence, defendant Instinct Productions, LLC moves for an order pursuant to CPLR 3211 (a) (7), dismissing the complaint of plaintiff Barry & Sons, Inc., doing business as Blackground Records, Inc., in its entirety for failing to state a cause of action.
This case is the most recent lawsuit to arise from the tragic and untimely death of R&B vocalist Aaliyah Dana Haughton who was killed in an airplane accident on August 25, 2001 in the Bahamas following the filming of a music video entitled "Rock the Boat." According to Instinct, following her death, Aaliyah's parents, individually and as coadministrators and co-personal representatives of her estate, commenced a wrongful death action against Instinct and several other defendants in the Superior Court of the State of California, Los Angeles County. That wrongful death action was ultimately settled with all defendants and voluntarily dismissed on or about October 31, 2003. By the terms of that settlement, Aaliyah's personal representatives released Instinct and every other defendant named in the wrongful death action from all claims related to Aaliyah's death. Blackground commenced this action on November 5, 2003.

The Amended Complaint

Following the commencement of this action, Instinct filed a preanswer motion to dismiss Blackground's complaint on the ground {**5 Misc 3d at 174}that it failed to state a cause of action. In response to that motion, Blackground amended its complaint. According to the amended complaint, Blackground was formed in 1992 by Aaliyah's uncle, Barry Hankerson, for the principal purpose of developing, promoting and capitalizing on Aaliyah's considerable musical talents. In or about October 1998, Blackground and Aaliyah entered into a recording agreement which provided that Aaliyah was to make multiple recordings and music videos for Blackground, which, in turn, was to distribute those recordings over a multiple-year period of time. The amended complaint also states that Aaliyah was a 10% owner of Blackground, that Aaliyah was Blackground's [*2]principal artist and asset, that Aaliyah and Blackground had become closely identified with one another, and that Blackground had grown its business substantially over the years due primarily to its successful efforts to develop and nurture Aaliyah's singing career.
The amended complaint further alleges that on or about August 20, 2001, Blackground and Instinct entered into an agreement in which Instinct agreed, for a fee to be paid by Blackground, to produce a music video entitled "Rock the Boat." This agreement is the basis for Blackground's declaratory judgment/breach of contract claim. In asserting that claim against all defendants,[FN1]

Blackground's amended complaint alleges that the production of the "Rock the Boat" video, and all the details associated therewith, were under the direct control of Instinct's producer and director who, along with Instinct, were fully responsible for all aspects of the video's production. Blackground further alleges that paragraph 4 (e) (ii) of the August 20, 2001 agreement provides that Instinct "shall be responsible and shall assume liability for . . . any and all loss or damage in connection with the production of the Video except to the extent arising out of Artist's [Aaliyah's] and/or company's [Blackground's] negligence or willful misconduct." Blackground alleges that Instinct failed to perform its obligations under the agreement as Aaliyah was killed in the crash of an airplane obtained and/or chartered by Instinct in connection with the production {**5 Misc 3d at 175}of the video. Blackground's amended complaint also alleges that Blackground fulfilled all of its obligations under the agreement and that the loss and damage suffered by Blackground did not arise out of its, or Aaliyah's negligence or willful misconduct. According to the amended complaint, Aaliyah's death has resulted in substantial loss and damage to Blackground for which Instinct is liable on account of the fact that Aaliyah's death occurred in connection with the production of the "Rock the Boat" video. The declaratory judgment section of the amended complaint concludes by alleging that there is an actual justiciable controversy between Blackground and Instinct involving an adverse legal interest under a contract and that sufficient immediacy exists so as to warrant the issuance by this court of a declaratory judgment to the effect that Instinct is liable to Blackground for its loss and damage.
In asserting a negligence cause of action against Instinct, Blackground alleges that the principals of Instinct have had a long, close and trusting professional and personal relationship with Barry Hankerson and Blackground, which began even before Instinct was formed. According to the amended complaint, this relationship caused Blackground to rely on Instinct's judgment when carrying out the duties and responsibilities Instinct assumed under the agreement, including the careful and safe transportation of Aaliyah. The amended complaint further alleges that Instinct owed a duty to Blackground, separate and apart from the obligations Instinct owed pursuant to the agreement, to use reasonable care in selecting the mode of transportation to transport Aaliyah so as to ensure not only her safety, but also the value she represented to [*3]Blackground in terms of current and future profits. It was foreseeable, according to Blackground, that any negligence by Instinct resulting in injury or death to Aaliyah would also result in immediate and substantial harm, loss and damage to Blackground. The amended complaint further alleges that Instinct violated the duty it owed to Blackground through its failure, and/or the failure of its agents, to arrange for the safe and reliable transportation of Blackground's principal artist, Aaliyah. According to Blackground, the harm and damage it has suffered have not resulted from any fault or negligence on its part, but are solely on account of Instinct's negligence. The negligence section of the amended complaint concludes by alleging that Instinct's negligent failure to arrange for the safe and reliable transportation of Aaliyah was the proximate cause of her death and {**5 Misc 3d at 176}that the damage Blackground has suffered as a result of that negligence has been substantial, totaling in the millions of dollars.

Instinct's Motion to Dismiss

In arguing that Blackground's complaint should be dismissed in its entirety pursuant to CPLR 3211 (a) (7) because it fails to state a cause of action, Instinct contends that New York courts have repeatedly held that a corporation has no right to recover damages sustained by it when one of its employees is injured or dies. According to Instinct, the reasons for this rule are that (1) wrongful death actions in New York are governed solely by Estates, Powers and Trusts Law § 5-4.1, not by common law; (2) a third party owes no legal duty to an employer for the death of an employee; and (3) such actions are barred on public policy grounds. Instinct claims that an examination of Blackground's amended complaint reveals that Blackground is improperly seeking recovery for the damages it has suffered as a result of the wrongful death of its employee, Aaliyah. Instinct further contends that Blackground's declaratory judgment cause of action, which Instinct argues is a tort disguised as a contract claim, is also an improper attempt by Blackground to recover the damages arising out of Aaliyah's wrongful death.
In the alternative, Instinct argues that if Blackground's declaratory judgment action is truly a breach of contract claim, the August 20, 2001 agreement does not provide Blackground with a basis for imposing liability on Instinct for Aaliayh's death. Instinct argues that the language of paragraph 4 (e) (ii), which states that Instinct "shall be responsible and shall assume liability for . . . any and all loss or damage in connection with the production of the Video except to the extent arising out of Artist's [Aaliyah's] and/or company's [Blackground's] negligence or willful misconduct," was not intended and cannot be construed to support Blackground's claim that Instinct is liable for the loss of current and future profits Blackground has allegedly suffered as a result of Aaliyah's death. Rather, Instinct argues that paragraph 4 (e) is a garden-variety indemnification clause applying only to third-party claims, and not to the first-party claim asserted in Blackground's amended complaint. In the absence of any specific language to the contrary, Instinct argues, such an indemnification clause should not be construed to cover first-party claims between an indemnitor and an indemnitee.{**5 Misc 3d at 177}

Blackground's Opposition

In opposing Instinct's motion to dismiss, Blackground contends that Instinct is attempting to rewrite its amended complaint. Blackground argues that its negligence cause of action is just that, a negligence cause of action, and not an impermissible action for wrongful death. Blackground contends that it is not suing Instinct for the wrongful death of Aaliyah but, [*4]rather, is suing Instinct for its negligence, which Blackground alleges has resulted in severe harm and loss. Therefore, Blackground argues, Instinct is seeking dismissal of a claim that Blackground simply has not asserted in its amended complaint. Blackground further argues that it may proceed with its negligence cause of action against Instinct, despite the fact that a party generally may not recover for economic injuries in the absence of physical injury, because of the special relationship that existed between Blackground and Instinct. Blackground contends that New York courts have recognized that certain relationships of trust and confidence may result in a duty of care which would permit a party to recover for a purely economic loss and argues that it has alleged such a relationship in its amended complaint wherein it pleads a long, close and trusting personal and professional relationship between Blackground and Instinct.
With respect to its declaratory judgment cause of action, Blackground contends that Instinct, by claiming that paragraph 4 (e) of the August 20, 2001 agreement cannot be construed to support the theory that the parties intended Instinct to be liable to Blackground for profits lost as a result of Aaliyah's death, has argued that the agreement is ambiguous. Blackground argues that because Instinct believes paragraph 4 (e) is ambiguous, Instinct's motion to dismiss must be denied because interpretation of an ambiguous contract requires a factual inquiry by the court which Instinct contends cannot be properly done on a motion to dismiss. Lastly, Blackground argues that the language of paragraph 4 (e) (ii) can be construed to support its recovery for the loss and damage it has incurred in connection with the production of the "Rock the Boat" video. Blackground contends that paragraph 4 (e) (i), which it argues applies separately to "any injuries to Artist [Aaliyah] or any other person in connection with the production of the Video," bolsters its contention that, pursuant to paragraph 4 (e) (ii), Instinct is liable for any and all damages sustained by Blackground in connection with the music video.{**5 Misc 3d at 178}

Instinct's Reply

In reply to Blackground's opposition, Instinct reiterates its argument that Blackground, as Aaliyah's employer, cannot sue Instinct for her wrongful death, either in tort or contract. Instinct also argues that, contrary to Blackground's assertion, it does not believe that the August 20, 2001 agreement is ambiguous, and since there is no ambiguity, interpretation of the contract is a question of law for the court. According to Instinct, the fact that paragraph 4 (e) contains an insurance procurement clause requiring it to maintain public liability and property damage insurance, which Instinct contends insures against third-party claims, is evidence that paragraph 4 (e) is a standard third-party indemnification clause, and not a basis for Blackground to assert a first-party declaratory judgment claim.
Instinct further argues that Blackground's contention that it is entitled to assert a negligence cause of action against Instinct because it has alleged in its amended complaint a long, close and trusting professional and personal relationship between the parties is without merit. Instinct argues that a fiduciary relationship did not arise between it and Blackground merely because they entered into the August 20, 2001 agreement. Instinct contends that by failing to plead the facts that would allow the court to infer a long and close relationship between the two parties, Blackground cannot transform a simple business relationship into a fiduciary one. Instinct also contends that the cases cited by Blackground in support of its "relationship of trust and confidence" theory are not applicable to this action because those cases did not involve the death of an employee. Instinct further argues that the plaintiffs in Blackground's "relationship [*5]of trust and confidence" cases provided the court with extremely detailed and extensive factual allegations that enabled the court to find the existence of a fiduciary relationship. As Blackground has failed to plead such supporting facts here, Instinct contends, there is no basis in law or fact for the court to find that a fiduciary relationship existed between Instinct and Blackground so as to impose upon Instinct a duty of care to provide Aaliyah with safe transportation.

Analysis

I. The Standard of Review

The court's role in resolving a motion to dismiss is ordinarily limited to determining whether the complaint states a cause of action (Frank v DaimlerChrysler Corp., 292 AD2d 118 [1st Dept 2002]). Thus, the standard on a motion to dismiss a pleading for failure {**5 Misc 3d at 179}to state a cause of action is not whether the party has artfully drafted the pleading but whether, deeming the pleading to allege whatever can be reasonably implied from its statements, a cause of action can be sustained (see Stendig, Inc. v Thom Rock Realty Co., 163 AD2d 46, 48 [1st Dept 1990]). When deciding whether a cause of action can be sustained, the pleadings must be liberally construed (see CPLR 3026) and the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Furthermore, "[a]t least the way the . . . drafters envisioned it, the motion may, upon affidavits and the same kind of other proof usable on any CPLR 3211 motion, go behind the pleading and prove that it lacks merit" (Siegel, NY Prac § 265, at 425 [3d ed] [emphasis added]; see also Stylianides v De Lorean Motor Co., 115 Misc 2d 861, 864 [Sup Ct, NY County 1982]). It is improvident for the court, however, to, sua sponte, search the record on a motion to dismiss pursuant to CPLR 3211 (a) (7) as this motion merely addresses the sufficiency of a pleading and is separate and distinct from a motion for summary judgment pursuant to CPLR 3212 which searches the record and looks to the sufficiency of the underlying evidence (see Tenzer, Greenblatt, Fallon & Kaplan v Capri Jewelry, 128 AD2d 467, 469 [1st Dept 1987]).

II. Blackground's Declaratory Judgment Cause of Action

In asserting its declaratory judgment cause of action which, contrary to Blackground's contention, sounds in breach of contract, Blackground relies upon paragraph 4 (e) (ii) of the August 20, 2001 agreement. Paragraph 4 (e), in its entirety, states:
"You [Instinct] shall be responsible and shall assume liability for (i) any injuries to Artist [Aaliyah] or any other person in connection with the production of the Video and (ii) any and all loss or damage in connection with the production of the Video except to the extent arising out of Artist's [Aaliyah's] and/or Company's [Blackground's] negligence or willful misconduct. You [Instinct] represent and warrant that you presently carry public liability and property damage insurance in a minimum amount of One Million Dollars ($1,000,000) and that you [Instinct] also carry workmen's compensation insurance in accordance with applicable{**5 Misc 3d at 180} state laws. You [Instinct] shall name Company [Blackground] as an additional insured [*6]under such insurance policies and you [Instinct] shall deliver to Company [Blackground] a Certificate of Insurance specifying the aforesaid prior to commencement of shooting the Video."
The fundamental, neutral precept of contract interpretation is that agreements are to be construed in accordance with the parties' intent (see Slatt v Slatt, 64 NY2d 966, 967 [1985], rearg denied 65 NY2d 785 [1985]). "The best evidence of what parties to a written agreement intend is what they say in their writing" (Slamow v Del Col, 79 NY2d 1016, 1018 [1992]). A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms (see e.g. R/S Assoc. v New York Job Dev. Auth., 98 NY2d 29, 32 [2002], rearg denied 98 NY2d 693 [2002]; W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). A contract is unambiguous if the language it uses has "a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978], rearg denied 46 NY2d 940 [1979]). Thus, if the agreement on its face is reasonably susceptible of only one meaning, the court is not free to alter the contract to reflect its personal notions of fairness and equity (see e.g. Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 520 [1996]; First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630, 638 [1968], rearg denied 22 NY2d 827 [1968]). Whether an agreement is ambiguous is a question of law for the court and is determined by looking within the four corners of the document, not to outside sources (Kass v Kass, 91 NY2d 554, 566 [1998]). When deciding whether an agreement is ambiguous courts should examine the entire contract, particular words should be considered, not as if isolated from the context, but in light of the obligation as a whole, and form should not prevail over substance (id.). Contract provisions are not ambiguous merely because the parties interpret them differently (Mount Vernon Fire Ins. Co. v Creative Hous., 88 NY2d 347, 352 [1996]). Ultimately, the court's aim is a practical interpretation of the language employed by the parties so that there may be a realization of the parties' "reasonable expectations" (Sutton v East Riv. Sav. Bank, 55 NY2d 550, 555 [1982]).
Here, paragraph 4 (e) (ii), the subsection of the August 20, 2001 agreement which Blackground specifically cites in asserting{**5 Misc 3d at 181} its declaratory judgment cause of action, states that Instinct "shall be responsible and shall assume liability for . . . any and all loss or damage in connection with the production of the Video except to the extent arising out of Artist's [Aaliyah's] and/or Company's [Blackground's] negligence or willful misconduct." When read in isolation, this subsection of paragraph 4 (e) could be construed to support a first-party recovery by Blackground for the losses it has suffered as a result of Instinct's alleged failure to perform its implied contractual obligations. However, when read in its entirety, and in conjunction with the other provisions of the agreement, it is apparent that paragraph 4 (e) is a standard third-party indemnification clause written to protect Blackground from third-party claims arising out of the production of the "Rock the Boat" video, and not to provide Blackground with a basis to assert a [*7]first-party claim against Instinct.
Firstly, paragraph 4 (e) (i) provides that Instinct "shall be responsible and shall assume liability for (i) any injuries to Artist [Aaliyah] or any other person in connection with the production of the Video." Because neither Aaliyah nor "any other person" were parties to the August 20, 2001 agreement between Blackground and Instinct, Aaliyah and "any other person" are third parties. Therefore, the liability assumed by Instinct in the very first subsection of paragraph 4 (e) is liability for injuries suffered by third parties in connection with the production of the "Rock the Boat" video. Secondly, the insurance procurement provision of paragraph 4 (e), which requires Instinct to represent and warrant that it carries a minimum of $1 million worth of public liability and property damage insurance, is further support for the interpretation that paragraph 4 (e) is a standard third-party indemnification clause because public liability and property damage insurance, also known as commercial general liability insurance, provides coverage to an insured for its liability for bodily injury or property damage sustained by third parties in the course of the insured's business or professional activities (3 New York Insurance Law § 38.01, at 38-3 [Matthew Bender & Co.; Wolcott B. Dunham, Jr., ed]; Niagara Frontier Transp. Auth. v Tri-Delta Constr. Corp., 107 AD2d 450, 451 [4th Dept 1985] [describing indemnification clauses as agreements negotiated at arm's length between sophisticated business entities for the purpose of allocating the risk of liability to third parties between themselves through the employment of insurance]). Furthermore, to ensure that {**5 Misc 3d at 182}Instinct's employees, who are also third parties, would be compensated for any injuries or deaths occurring during the "Rock the Boat" production, paragraph 4 (e) also requires Instinct to carry workers' compensation insurance, which is intended to provide compensation for the disability or death of an employee caused by injury arising out of and sustained in the course of employment (3 New York Insurance Law § 48.01, at 3-48). Moreover, because the "well-understood meaning" of the term additional insured is "an 'entity enjoying the same protection as the named insured' " (Pecker Iron Works of N.Y. v Traveler's Ins. Co., 99 NY2d 391, 393 [2003], quoting Del Bello v General Acc. Ins. Co., 185 AD2d 691, 692 [4th Dept 1992]), the fact that paragraph 4 (e) requires Instinct to name Blackground as an additional insured under its public liability/property damage and workers' compensation insurance policies evidences the intent of both parties to protect Blackground from any third-party claims arising out of the production of the "Rock the Boat" video by providing Blackground with the same protections that Instinct, as the named insured, would be entitled to under those policies.
Most importantly though, construing paragraph 4 (e) to support not only third-party claims, but also Blackground's first-party declaratory judgment cause of action, would render meaningless this critical provision of the parties' August 20, 2001 agreement. Pursuant to paragraph 4 (c) of the agreement, Blackground and Instinct agreed that each would "at all times indemnify and hold harmless the other . . . from and against any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees, arising out of any breach by the other of any warranty or agreement made by you herein."[FN2]

If the court were to now construe [*8]paragraph 4 (e) as permitting Blackground's first-party declaratory judgment claim, this interpretation would compel the illogical conclusion that, in the event it were to recover damages under that claim, Blackground, pursuant to paragraph 4 (c), would be contractually obligated to indemnify Instinct for those damages, and would render paragraph 4 (e) meaningless. This is a result the court must strive to avoid when interpreting a contract (Two Guys from Harrison-{**5 Misc 3d at 183}N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403 [1984] [stating that one of the court's goals when construing a contract is to avoid an interpretation that would leave contractual clauses meaningless]; Yoi-Lee Realty Corp. v 177th St. Realty Assoc., 208 AD2d 185, 190 [1st Dept 1995] [noting that contracts should be construed to give full force and effect to their provisions and not in a manner so as to render them meaningless]). Therefore, in comportment with the general principles of contract interpretation, the court finds that paragraph 4 (e) is a standard third-party indemnification clause and grants Instinct's motion for a declaration that it is not liable for the economic damages incurred by Blackground as a result of its alleged breach of the August 20, 2001 agreement.[FN3]

III. Blackground's Negligence Cause of Action

Although at one time there was a conflict in New York regarding whether an employer, who is deprived of the services of an employee as a result of the negligence of a third party, has a cause of action against that third party, that conflict has long since been resolved (2C Warren, Negligence in New York Courts § 67.07, at 156-157 [4th ed]). In Ferguson v Green Is. Contr. Corp. (36 NY2d 742, 743 [1975]), the Court of Appeals held that an employer has no right to recover damages when one of its employees is injured as a consequence of the negligence of a third party. In Ferguson an employer sought to recover damages it had allegedly sustained as a result of the disabling personal injuries suffered by a difficult-to-replace employee in an airplane crash (id.). The employer alleged that the injuries suffered by its employee were caused by the defendant airplane owner/operator's negligent operation of the private aircraft in which the employee was flying (id.).
For the Ferguson holding to serve as a bar to Blackground's negligence cause of action, the question that the court must answer, and which neither party has briefed, is whether or not Aaliyah was an employee of Blackground at the time of her death in August 2001. New York Labor Law article 6, which governs an employer's payment of wages and benefits to an employee, defines an employee as "any person employed for hire by an employer in any employment" (Labor Law § 190 [2]). In a similarly broad fashion the section defines an employer as "any person, corporation, limited liability company, or association employing {**5 Misc 3d at 184}any individual in any occupation, industry, trade, business or service" (Labor Law § 190 [3]). When determining whether an employer-employee relationship exists for the purposes of article 6 of [*9]the Labor Law, the critical inquiry is the degree of control exercised by the purported employer over the results produced or the means used to achieve those results (Bynog v Cipriani Group, 1 NY3d 193 [2003]). The factors relevant to assessing such control include whether the worker (1) worked at her own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule (id.).
According to the general allegations section of Blackground's amended complaint, Blackground was formed in 1992 by Aaliyah's uncle, Barry Hankerson, principally to develop, promote, and capitalize on Aaliyah's considerable musical talents. Blackground also alleges that its growth and prosperity were primarily the result of its efforts to successfully develop and nurture Aaliyah's career, and that over time, Aaliyah and Blackground became closely identified with each other. The amended complaint further alleges that Aaliyah was a 10% owner of Blackground and that Aaliyah and Blackground had entered into a recording agreement in or about October 1998 which provided for Aaliyah to make multiple recordings and music videos for Blackground and for Blackground to distribute those recordings over a multiple-year period of time. The general allegations section of the amended complaint concludes by alleging that Aaliyah was Blackground's principal artist and its principal asset.
Accepting the facts alleged by Blackground as true and according it the benefit of every possible favorable inference (Leon v Martinez, 84 NY2d at 87, 88), it is apparent that there are no allegations in the amended complaint regarding the level of creative control exercised by Blackground over Aaliyah's musical recordings, her music videos or her musical career as a whole. Nor does the amended complaint allege any of the factors of control that are necessary for the court to find that the relationship between Blackground and Aaliyah was one of an employer and an employee. Instead, the amended complaint specifically alleges, and the court finds, that Aaliyah was actually Blackground's primary asset (see generally Laird v United States, 556 F2d 1224, 1233 [5th Cir 1977] [stating that professional football players' contracts represent independent and uniquely valuable assets to professional football franchises];{**5 Misc 3d at 185} KFOX, Inc. v United States, 510 F2d 1365, 1378 [Ct Cl 1975] [stating that as to professional sports teams, athletes and their contracts are at the heart of profitability]). Therefore, Blackground's negligence cause of action is not an improper attempt by an employer to recover damages incurred as a result of the wrongful death of an employee (see Ferguson v Green Is. Contr. Corp., 36 NY2d at 743) but is an ordinary negligence claim seeking recovery for damages allegedly arising out of the negligent destruction of a valuable property asset.
Furthermore, while it is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987]), and that such a duty may spring forth from the relationship of the contracting parties if their relationship is a special one of trust and confidence (Apple Records v Capital Records, 137 AD2d 50, 55 [1st Dept 1988]), the court does not reach Instinct's argument, made in reply, that Blackground's negligence cause of action should be dismissed because of Blackground's failure to sufficiently plead the long, close and trusting personal and professional relationship it alleges it had with Instinct. The function of reply papers is to address arguments made in opposition to the position taken by the movant, not to permit the [*10]movant to introduce new grounds in support of, or new grounds for, the motion (Dannasch v Bifulco, 184 AD2d 415, 417 [1st Dept 1992]). Thus, the court should not even consider arguments making their initial appearance in reply papers (Azzopardi v American Blower Corp., 192 AD2d 453, 454 [1st Dept 1993]). In opposing Instinct's motion to dismiss, Blackground argues that New York courts have recognized an exception to the general rule that a party may not recover for economic injuries in the absence of physical injury situations where the relationship of the parties results in a duty of care. Blackground's opposition papers also make the corresponding argument that because its amended complaint alleges a long, close and trusting personal and professional relationship with Instinct, Blackground has a basis to assert against Instinct not only a declaratory judgment/breach of contract cause of action, but a separate and distinct tort claim for economic damages. Had Instinct's argument in reply been that no such exception was recognized in this state, it would have been appropriate for the court to address that argument. Instead, Instinct's reply introduces a new argument in support of its motion to dismiss{**5 Misc 3d at 186}that because Blackground has failed to support its long, close and trusting relationship pleading with any specific factual allegations that would allow the court to infer a fiduciary relationship between the parties, Blackground's amended complaint fails to state a cause of action for negligence. As it makes its initial appearance in Instinct's reply papers and goes well beyond merely addressing the arguments raised by Blackground in opposition, Blackground has not been afforded the opportunity to respond to this argument. Since consideration of an argument advanced at a time when the opposing party has no opportunity to respond to it is a procedure which the Appellate Division, First Department, has consistently condemned (Schultz v 400 Coop. Corp., 292 AD2d 16, 21 [1st Dept 2002]), the court declines to consider Instinct's argument in reply challenging the sufficiency of Blackground's fiduciary relationship allegation. Therefore, having determined that Blackground's negligence cause of action is not barred by the rule prohibiting an employer from recovering damages when one of its employees is injured as a consequence of the negligence of a third-party (Ferguson v Green Is. Contr. Corp., 36 NY2d at 743), and because it may not consider the additional ground for dismissal raised for the first time in Instinct's reply papers, the court denies Instinct's motion to dismiss Blackground's negligence cause of action.
Accordingly, it is hereby ordered that defendants' motion to dismiss plaintiff's complaint in its entirety is granted to the extent that plaintiff Blackground's first cause of action seeking a declaratory judgment against defendant Instinct is dismissed.

Footnotes

Footnote 1: The court notes that in addition to Instinct, the amended complaint also asserts declaratory judgment and negligence causes of action against defendants Brent Coert and Harold "Hype" Williams, whom the amended complaint alleges were employed by Instinct as producer and director of the "Rock the Boat" video respectively. However, according to Instinct, neither Coert nor Williams have been served with process or appeared in this action. While Instinct has moved to dismiss Blackground's complaint in its entirety, neither Coert nor Williams have joined in this motion.

Footnote 2: Because neither party has addressed the effect paragraph 4 (c) would have, if any, on the merits of Blackground's declaratory judgment cause of action, and because it is beyond the purview of the court to do so as the court should not, sua sponte, search the record on a motion to dismiss pursuant to CPLR 3211 (a) (7), the court discusses paragraph 4 (c) for the limited purpose of properly interpreting paragraph 4 (e).

Footnote 3: Because this is a declaratory judgment action, the court treats Instinct's motion to dismiss pursuant to CPLR 3211 (a) (7) as a motion for a declaration in its favor (Fekishazy v Thomson, 204 AD2d 959, 963 n 2 [3d Dept 1994]).