**ONE BEACON INSURANCE COMPANY a/s/o Steven and Loretta Davis, Plaintiff,**

v.

**ORANGE AND ROCKLAND UTILITIES, INC. and Cablevision Systems Corporation, Defendants.**

**No. 03 CIV. 1561(SCR).**

United States District Court, S.D. New York.

March 21, 2005.

A. Richard Bailey, Sean P. Carter, Cozen & O'Connor, Philadelphia, PA, Michael J. Sommi, Cozen O'Connor, New York, NY, for Plaintiff.

Michael J. McNulty, Richard W. Babinecz, Steven P. Orlowski, Lester, Schwab, Katz and Dwyer LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background:

### A. Statement of Facts:

One Beacon Insurance Company, (the "Plaintiff"), a property insurance carrier, brought this action as subrogee of Steven and Loretta Davis (collectively referred to herein as "Davis") seeking reimbursement for its payment of $350,000 to Davis.

On June 14, 2001 a fire caused substantial damage to the Davis residence. The fire occurred when an electrical wire attached to a nearby utility pole separated from a utility transformer and came in contact with a television cable causing the electrical energy from the electrical wire to travel through the television cable and into the Davis residence. The utility transformer and electric wire were owned and maintained by Orange and Rockland Utilities ("O & R") and the television system was owned and maintained by Cablevision Systems Corporation ("Cablevision"; O & R and Cablevision are collectively referred to herein as the "Defendants"). According to stipulated facts, there is no allegation that Cablevision's cable was negligently attached to the utility pole.

Before this incident, Cablevision (or its corporate predecessor) had installed and maintained its cable television wires on existing utility poles, which were owned by O & R and New York Telephone Company under a joint ownership arrangement. These poles already had high and low voltage electric wires and telephone wires on them, and Cablevision was not permitted to use these poles without the consent of the joint owners.

In August 1981, O & R and Cablevision's corporate predecessor, Teleprompter Corporation, which is now known as CATV Company,[1] entered into a pole attachment

---

1. For the purposes of this motion, the court will use the terms CATV Company and Cablevision interchangeably.

agreement ("Agreement") wherein CATV Company was permitted to attach certain cable lines to an existing utility pole owned by O & R. Article VII of this agreement, entitled "Liability, Damages and Insurance," required CATV Company to "defend, indemnify, protect and hold harmless O & R...from and against any and all loss, liability, damages and expense arising out of any demand, claim, suit, or judgment for damage to property..., which may arise out of or be caused by the erection, maintenance, presence, use or removal of CATV Company's attachments or by the proximity of the respective cables, wires, apparatus, and appliances of the parties hereto,... and irrespective of any fault, failure negligence on the part of O & R...." [2]

## B. Procedural History:

The Plaintiff commenced this action on March 7, 2003 by filing a complaint alleging five causes of action. The first cause of action alleges that the damage to the Davis home was the direct and proximate result of the negligence, carelessness, recklessness and gross negligence of O & R. The second cause of action is based upon an alleged breach of warranty by O & R, while the third count alleges breach of contract by O & R. The fourth cause of action alleges negligence by Cablevision, and the fifth alleges breach of warranty by Cablevision.

In April 2003, O & R filed a verified answer and cross-complaint against Cablevision, alleging common law indemnification and contribution and breach of contract for failing to provide proper insurance. Cablevision filed an answer on May 1, 2003 and an amended answer later that month.

Defendant O & R brought this motion for summary judgment requesting that the court find that Cablevision is obligated to fully indemnify O & R in this action. Cablevision opposes this motion on several grounds: 1) the fire was not within the scope of the agreement because it "arose," for the purposes of the Agreement, out of O & R's wires and not Cablevision's cables; 2) even if the fire arose out of Cablevi-

2. The full text of the relevant section of the Agreement is as follows:

Section 22

(a) CATV Company shall defend, indemnify, protect and hold harmless O & R, and any other user of poles for which endorsements hereunder are provided, from and against any and all loss, liability, damages and expense arising out of any demand, claim, suit, or judgment for damage to property or injury to or death of persons, including without limitation members of the public abutting land owners, the officers, agents, and employees of either party hereto, and of any other user of said poles, including payment made under any Workmen's Compensation law or under any plan for employees' disability and death benefits, which may arise out of or be caused by the erection, maintenance, presence, use or removal of CATV Company's attachments or by the proximity of the respective cables, wires, apparatus, and appliances of the parties hereto, or of any other user of such poles, or arising out of any act or omission of CATV Company, including without limitation any claims and demand of customers of CATV Company, or others, and irrespective of any fault, failure negligence on the part of O & R, or of any other user of such poles.

(b) Neither O & R, nor any other user shall be liable to CATV Company or to any third party (and CATV Company shall indemnify, protect, and save harmless O & R and any other user against any claim by any third person) for any interruption or damage to CATV Company's service or equipment arising in any manner whatsoever.

(c) CATV Company specifically waives any claim against O & R or any other user for consequential damages or loss of profits, irrespective of any fault, failure, negligence or alleged negligence on the part of O & R or of any other user of said poles.

sion's cables, the indemnification provision is ambiguous and should be construed against O & R where it would indemnify an allegedly negligent party; 3) Cablevision cannot be required to indemnify where, as here, O & R breached duties to Davis that are outside the scope of the Agreement; 4) summary judgment is inappropriate when O & R is alleged to have committed recklessness and/or gross negligence.

## II. Analysis

### A. Standard of review:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B. Whether The Pole Attachment Agreement Obligates Cablevision to Fully Indemnify O & R

In this case, the underlying facts regarding how the fire started have been stipulated to by the parties and are not in dispute. With this in mind, the court finds that the plain meaning of the expansive language of the indemnification clause of the Agreement clearly covers the June 14, 2001 fire and requires Cablevision to fully indemnify O & R in this case. Cablevision's arguments to the contrary are unpersuasive.

First, Cablevision argues that the accident arose out of O & R's electrically charged wire separating from O & R's transformer—not from the presence of Cablevision's attachments. Cablevision is undoubtedly correct that the fire arose out of O & R's wires, but it also arose out of the presence of Cablevision's attachments. There is no reason why the fire at issue could not, for the purposes of the Agreement, have arisen from both. In this case, it certainly did, for it cannot be contested that the fire would not have occurred if Cablevision had not attached its cables to the utility pole. The Agreement clearly requires Cablevision to indemnify O & R whenever, as here, loss arises from the presence of Cablevision's cables.[3]

Next, Cablevision argues the Agreement is too ambiguous to be construed in a way that would allow O & R to be indemnified for its negligence. It is

---

**3.** Cablevision claims that *National Union Fire Ins. Co. v. Port Auth.*, 261 A.D.2d 259, 690 N.Y.S.2d 260 (1st Dep't 1999), a case arising out of the 1993 terrorist bombing of the World Trade Center, is "strikingly similar" to this case, and should persuade the court not to enforce the indemnification clause on these facts. The court disagrees. In that case, a restaurant and hotel who had leased space in the WTC from the Port Authority had in their lease agreements an indemnification clause under which they were to indemnify the Port Authority from all claims of third persons "arising out of the use or occupancy" of the hotel and restaurant premises. The court held that, even though the customers bringing claims against the Port Authority suffered their injuries while on the premises of the lessees, their claims did not arise from their presence on those premises because the bomb was detonated in a wholly separate part of the World Trade Center not controlled by the lessees. Even assuming it is reasonable to analogize the facts of *National Union* with this case, which seems unlikely, it is important to note that, in this case, all the events giving rise to the fire occurred on "premises," namely the utility pole, fully owned and controlled by O & R, which permitted Cablevision to merely make attachments thereto. For this and seemingly many other reasons, *National Union* is distinguishable. All other cases cited by Cablevision are similarly unpersuasive.

true that, absent an express unequivocal provision to the contrary in an indemnification agreement, such agreement generally will not be construed to indemnify against the indemnitee's own negligence. *See Travelers Indem. Co. v. AMR Servs. Corp.*, 921 F.Supp. 176, 186 (S.D.N.Y. 1996). But in this case, the express terms of the Agreement require Cablevision to indemnify O & R "irrespective of any fault, failure negligence on the part of O & R," and, as such, it is unequivocal in its indemnification of O & R regardless of O & R's negligence. The Agreement is, on this issue, by no means ambiguous.[4]

Third, Cablevision argues that it should not be required to indemnify O & R where, as here, the Plaintiff has alleged that O & R committed other violations, including breach of warranty, breach of contract, and others. But, again, the clause of the Agreement is expansive in its requirement that Cablevision indemnify O & R "irrespective of any *fault, failure* negligence" on the part of O & R (emphasis added). Cablevision argues that this language cannot be construed to include O & R's alleged failure to properly and safely supply electricity to the Davis' home. The court disagrees. The Agreement was made to govern the addition of Cablevision's cables to O & R's electricity pole and, as such, the indemnification clause could not reasonably construed not to apply to losses re-

sulting from O & R's negligent failure to prevent accidents resulting from contact between O & R's and Cablevision's attachments.[5]

 Finally, Cablevision argues that summary judgment is inappropriate until it is determined that O & R did not commit gross negligence or recklessness. It is true that, in some cases, exculpatory agreements will not be read to exempt a willful or grossly negligent party from liability to an injured person. *See Kalisch–Jarcho, Inc. v. New York*, 58 N.Y.2d 377, 461 N.Y.S.2d 746, 448 N.E.2d 413, 416 (1983). But, as the New York Court of Appeals clarified in a subsequent case, this principle does not apply to indemnification contracts such as this that simply shift the source of compensation without restricting the injured party's ability to recover. *See Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 496 N.Y.S.2d 410, 487 N.E.2d 267, 267 (1985).

## III. Conclusion

For these reasons, O & R motion for summary judgment is GRANTED.

It is so ordered.

---

4. Cablevision argues that ambiguity is created by the presence of section 16 of the Agreement, but Cablevision's argument is misleading. Section 16 applies to situations in which Cablevision's equipment causes damage to the facilities of O & R or any other user of O & R's pole—not, as in the case here, situations in which damage is caused to third parties such as Davis.

5. *Niagara Frontier Transp. Authority v. Tri–Delta Constr. Corp.*, 107 A.D.2d 450, 487 N.Y.S.2d 428 (4th Dep't 1986), cited by Cablevision, is distinguishable. In that case, the owner of a commercial aircraft that was dam-

aged when it taxied into a construction site at Greater Buffalo International Airport sued the airport for negligence in scheduling the construction work and in failing to warn the flight crew of the work. The airport commenced an action against the contractor based upon a contractual indemnification clause, but the court held that there was nothing in the indemnification agreement to suggest that it intended to encompass the airport owner's negligence in the operation of the airport. In contrast, there is every reason to believe that the Agreement intended to encompass O & R's negligence in its operation and maintenance of the utility pole.