Shah v 20 E. 64th St. LLC (2024 NY Slip Op 04116)

Shah v 20 E. 64th St. LLC

2024 NY Slip Op 04116

Decided on August 01, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 01, 2024

Before: Kern, J.P., Moulton, Gesmer, Kennedy, Higgitt, JJ. 

Index No. 156305/15 Appeal No. 1143 Case No. 2022-01902 

[*1]Hemant Shah, et al., Plaintiffs,
v
20 East 64th Street LLC, Defendant-Respondent, Tri-Star Construction Corp., et al., Defendants, Urban Foundation/Engineering, LLC, Defendant-Appellant.

Mauro Lilling Naparty LLP, Woodbury (Eric Z. Leiter of counsel), for appellant.
Wade Clark Mulcahy LLP, New York (Michael A. Bono of counsel) and Steptoe LLP, Washington, DC (John F. O'Connor, of the bar of the State of Virginia, District of Columbia, and State of Maryland, admitted pro hac vice, of counsel), for respondent.

Order, Supreme Court, New York County (Joel M. Cohen, J.), entered March 31, 2022, which, to the extent appealed from as limited by the briefs, granted defendant 20 East 64th Street LLC's motion for contractual indemnification from defendant Urban Foundation/Engineering, LLC, unanimously modified, on the law, to limit Urban's contractual indemnification liability to 40% of the tort damages awarded by the jury and to 40% of an amount not yet determined for reasonable attorney's fees paid by 20 East 64th to plaintiffs to the extent that those fees are not attributable to 20 East 64th's breach of its contractual duties to plaintiffs, and otherwise affirmed, without costs.
The underlying litigation arises out of damages to plaintiffs' landmarked Italian renaissance-style townhouse during 20 East 64th's renovation of its abutting townhouse to create a bowling alley and other basement amenities. The action has now spanned nine years, three appeals, two jury trials, and one bench trial. The instant appeal involves the interpretation of a garden-variety indemnification clause in a standard American Institute of Architects (AIA) subcontract.
In 2013, 20 East 64th hired defendant Tri-Star Construction Corp. as the general contractor on the renovation project. Tri-Star, in turn, subcontracted with Urban to perform the excavation and underpinning work. In July 2013, Tri-Star and Urban executed AIA Document A-401-1997, the Standard Form of Agreement between Contractor and Subcontractor. The subcontract contains an indemnity clause in § 4.6.1.
Section 4.6.1 of the subcontract provides in relevant part:
"To the fullest extent permitted by law, the Subcontractor [Urban] shall indemnify and hold harmless the Owner [20 East], Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder" (emphasis added).
Nearly two months after Urban executed the subcontract, Urban signed a purchase order with Tri-Star, to be submitted with all Urban's invoices for payment (the September Purchase Order). The reverse side of the September Purchase Order contains, in small print, another indemnity clause in Paragraph 5(b).
Paragraph 5(b) provides in relevant part:
"Compliance with the foregoing requirements as to insurance [*2]shall not relieve you from liability under the following Indemnification to the fullest extent permitted by law. Subcontractor/vendor covenants and agrees to fully defend, protect and indemnify and hold harmless [Tri-Star], the owner of the building in which the work is performed [20 East 64th] and any other person to whom [Tri-Star] is obligated, by contract or otherwise, their employees and agents, mortgagees and tenants, from and against each and every claim, demand, judgment, damage, liability, cost, expense, or loss of any nature (including any related to personal injury, death or property loss or damage), caused by, arising from, or in any way incidental to the performance of the work hereunder, which may be asserted by subcontractor/vendor, its employees and agents or subcontractors or any third parties including but not limited to [Tri-Star], the owner of the building in which the work is performed [20 East 64th], their employees and agents, mortgagees and tenants."
Nothing in the September Purchase Order indicates that paragraph 5(b) was intended to supersede the indemnity clause in § 4.6.1 of the subcontract. In fact, the subcontract is not referenced anywhere in that purchase order.
In 2014, 20 East 64th entered into an Agreement Granting License, Access and Indemnity (the Access Agreement) with its next-door neighbors, plaintiffs Hemant and Varsha Shah. The Access Agreement contained, among other things, a jury waiver clause. The existence of this jury waiver clause was the cause of the convoluted nature of the litigation that ensued after discovery of damage to the Shah's home caused by 20 East 64th's excavation work.
In 2017, before the various trials began in this case, 20 East 64th moved for, among other things, conditional summary judgment on its cross-claim for contractual indemnification against Urban based solely on § 4.6.1 of the subcontract. By order dated September 26, 2017, Supreme Court (Lynn R. Kotler, J.), among numerous other rulings, granted 20 East 64th conditional summary judgment under § 4.6.1 of the subcontract (see Shah v 20 E 64th St. LLC, 2017 NY Slip Op 32028[U] [Sup Ct, NY County 2017]).
In 2018, the parties stipulated to a reverse trifurcated trial in two phases, which was so-ordered by the court. The parties agreed, in the first phase, to separate damages trials: a jury trial and, because of the jury waiver clause, a bench trial concerning the Shah's contract claims against 20 East 64th arising from the Access Agreement (Phase I). The parties agreed that the jury would determine the amount of damages for repair costs and alternative living expenses related to plaintiffs' tort claims. The parties further agreed that a judge would determine the amount of damages in connection with plaintiffs' contract claims against 20 East 64th for breach of the Access Agreement. Neither Urban nor Tri-Star participated in the bench trial.
In the second phase, the parties agreed that "the Second Trial will include all [*3]cross-claims among the Defendants" and "the liability component of Plaintiffs' Negligence Cause of Action against all Defendants and Plaintiffs' Strict Liability Cause of Action against Tri-Star. . . if still being pursued" (Phase II). Unlike Phase I, the parties did not specify the factfinder for the "Second Trial." However, only a jury trial was held in Phase II.
The Phase I damages trials were held in 2018. The jury in the tort action found that plaintiffs were entitled to $5.5 million in repair costs and $500,000 in alternative living expenses.[FN1] The judge in the bench trial found that plaintiffs were entitled to $6,255,007 in repair costs and $1,152,000 in alternative living expenses. Based on a contractual indemnity provision in the Access Agreement, the judge also found that 20 East 64th was liable to plaintiffs for their reasonable attorney's fees. However, the jury was never presented with the issue of whether Urban was obligated to indemnify 20 East 64th for those fees.
In June 2019, the Shahs entered a judgment in the amount of $12,299,173.50 against 20 East 64th for breach of the Access Agreement. The judgment was comprised of $6,255,007 in repair costs, $1,152,000 in alternative living expenses, $1,850,000 in attorney's fees (to which plaintiffs and 20 East 64th stipulated), $3,040,931.50 in statutory interest, and $1,235.00 in costs and disbursements. After the Shahs received $12,299,173.50 from 20 East 64th's insurer in 2022 to satisfy the Access Agreement judgment, they elected not to pursue a judgment for the tort damages.
In July 2019, the Phase II jury found that Tri-Star and Urban were negligent and that their negligence caused the Shah's property damages. The jury assigned 60% fault to Tri-Star and 40% fault to Urban.
In 2022, 20 East 64th filed the underlying motion seeking contractual indemnification against Urban in the amount of 100% of the contract damages awarded by the court.[FN2] Even though conditional summary judgment was awarded five years earlier based solely on § 4.6.1 of the subcontract, 20 East 64th changed course by additionally seeking indemnification based on the broader indemnification clause contained in the September Purchase Order.
The court agreed with 20 East 64th's arguments and awarded it contractual indemnification in the amount of 100% of the contract damages. Urban appealed.
Preliminarily, we reject Urban's argument that because 20 East 64th had previously filed another posttrial motion, Supreme Court should have rejected the challenged motion as barred by CPLR 4405, which provides that a posttrial motion shall not be made after an appeal, and by CPLR 4406, which provides that a party may make only one posttrial motion. 20 East 64th's motion did not seek to set aside a verdict or to vacate a judgment; rather, the challenged motion simply sought judicial recognition that the condition called for at the time of the court's September 26, 2017 order was met by the finding at trial that Urban's negligence [*4]had proximately caused plaintiffs' property damages (see CPLR 4404; Prote Contr. Co. v Board of Educ. of City of N.Y., 230 AD2d 32, 39 [1st Dept 1997]; McCarthy v Port of N.Y. Auth., 21 AD2d 125, 127-128 [1st Dept 1964]). Thus, CPLR 4405 and 4406 do not apply. Moreover, the record does not support Urban's argument that 20 East 64th abandoned its contractual indemnification cross claim or waived reliance on it (see Jin Ming Chen v Insurance Co. of the State of Pa.,165 AD3d 588, 589 [1st Dept 2018], affd 36 NY3d 133 [2020]).
We also reject Urban's argument that an award of contractual indemnification is precluded by the waiver of subrogation provision in the contract between 20 East 64th and Tri-Star. The waiver provision would apply if 20 East 64th's insurer had satisfied plaintiffs' favorable judgments through 20 East 64th's property insurance coverage, which covered structures erected on its property, not structures on neighboring properties. However, the judgments were satisfied through liability coverage and excess liability coverage (see AIG Prop. Cas. Co. v SF Constr. Servs., Inc., 220 AD3d 590 [1st Dept 2023]; Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp., 106 AD2d 242, 244-245 [1st Dept 1985], affd 66 NY2d 779 [1985]).
We now turn to the quantification of damages to which 20 East 64th is entitled pursuant to contractual indemnification. An agreement to assume contractual indemnification "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed" (Hooper Assoc. v AGS Computers, 74 NY2d 487, 491 [1989]). The indemnity agreement must be "clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances" (id. at 491-492). Anindemnity provision "should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract" (Niagara Frontier Transp. Auth. v Tri-Delta Constr. Corp., 107 AD2d 450, 453 [4th Dept 1985], affd 65 NY2d 1038 [1985]).
Admittedly, as Supreme Court stated on the record, § 4.6.1 is broadly worded. Nevertheless, broadly worded language does not entitle a court to "deviate from [Hooper's] exacting standard that the agreement must contain 'unmistakably clear' language of the parties' intent" (Sage Sys., Inc. v Liss, 39 NY3d 27, 31, 33 [2022] [it was not unmistakably clear that the parties intended to indemnify each other for attorney's fees in a contract action between them despite a broadly worded indemnification clause covering "all claims, demands, liabilities, costs, damages, expenses and causes of action of any nature whatsoever arising out of or incidental to any act"] [internal quotation marks and emphasis omitted]).
It is not "unmistakably clear" or "clearly implied" from the language of § 4.6.1 that Urban assumed a duty to indemnify 20 East 64th for the contract damages (Hooper, 74 NY2d at [*5]491-492). Urban agreed to indemnify 20 East 64th and Tri-Star for damages "only to the extent caused by the negligent acts or omissions of the Subcontractor." Because the jury apportioned only 40% fault to Urban, 20 East 64th is not entitled to indemnification beyond Urban's percentage of fault (see Hernandez v Argo Corp., 95 AD3d 782, 784 [1st Dept 2012] [interpreting § 4.6.1 in an AIA contract as limiting indemnification to "the extent to which [the indemnitor's] negligence is determined to have contributed to the accident"]).
Contrary to 20 East 64th's argument, § 4.6.1 cannot be read simultaneously to express Urban's intent to indemnify Tri-Star for Urban's 40% share of the tort damages and Urban's intent to indemnify 20 East 64th for 100% of the contract damages, without regard to fault. Interpreting § 4.6.1 to cover the contract damages, which were more than the tort damages, improperly renders meaningless the phrase "but only to the extent caused by the negligent acts or omissions of Subcontractor" by obligating Urban to indemnify 20 East 64th for Tri-Star's negligence and for 20 East 64th's own breaches of the Access Agreement (see Bradley v Earl B. Feiden, Inc., 8 NY3d 265, 274 [2007]; Hooper, 74 NY2d at 492-493]).
Moreover, when Urban and Tri-Star executed the subcontract, they could not have foreseen that 20 East 64th would unilaterally increase Urban's liabilities one year later by entering into an agreement containing a jury waiver clause, which led to different factfinders awarding different amounts for the same damages. Therefore, the contract damages are not of such character that is reasonable to infer that they were intended to be covered under § 4.6.1 (see Niagara Frontier Transp. Auth., 107 AD2d at 453; see also Tokyo Tanker Co. v Etra Shipping Corp., 142 AD2d 377, 378 [1st Dept 1989] ["(a)n indemnification agreement will not be read to impose obligations upon the indemnitor which are neither disclosed at the time of its execution nor reasonably within the scope of its terms and the over-all intendment of the parties at the time of its making"], lv dismissed 74 NY2d 792 [1989], lv denied 75 NY2d 702 [1989]).
Furthermore, the higher contract damages did not arise out of or result from the performance of Urban's work as required under § 4.6.1 because Urban's work excluded its obligation to secure access to plaintiffs' property (see Hedges v Planned Sec. Serv., Inc., 190 AD3d 485, 487-488 [1st Dept 2021], lv dismissed 37 NY3d 1040 [2021] [interpreting the language "arising out of" to exclude damages that arise outside of the scope of indemnitor's contractual duties]). Although 40% of the tort damages arose out of or resulted from Urban's work, the amounts awarded in excess of the tort damages (i.e., the contract damages) were solely attributable to 20 East 64th's independent act of agreeing to a jury waiver clause.
20 East 64th's argument regarding indemnification for attorney's fees stands on different footing. Urban points [*6]out that when it signed the subcontract, no contract existed obligating 20 East 64th to pay plaintiffs' legal fees, which are generally not awarded in tort. However, the problem with this argument is that it overlooks § 4.6.1's explicit reference to "attorney's fees." Notably, Urban provides no explanation for the purpose of this explicit reference, which must be given its fair meaning. Here, construing the reference to "attorney's fees" to cover third party claims "affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect" (Hooper, 74 NY2d at 493).
Finally, Supreme Court violated the doctrine of the law of the case by relying on the September Purchase Order as a basis for contractual indemnity five years after another judge of the same court granted 20 East 64th conditional summary judgment under § 4.6.1 (see Rivera v Columbia Hicks Assoc. LLC, 203 AD3d 524, 525 [1st Dept 2022] [law of the case barred the indemnitors from dismissing a contractual indemnification claim after conditional summary judgment was granted to the indemnitee]; Glynwill Invs. v Shearson Lehman Hutton, 216 AD2d 78, 79 [1st Dept 1995] [law of the case precluded the court from granting summary judgment to the indemnitee because, in a prior action, another judge resolved the construction of a release as having limited effect]).[FN3]
Even if the doctrine did not apply, the court should not have relied on the indemnity provision in the purchase because it is irreconcilable with § 4.6.1. Paragraph 5(b) of the September Purchase Order provides for indemnification regardless of negligence; § 4.6.1 of the subcontract provides for indemnification only to the extent of Urban's negligence. 20 East 64th's attempt to reconcile these mutually exclusive indemnity provisions is based on its distorted reading of § 4.6.1.
Because the court erred in relying on the September Purchase Order, it is unnecessary to reach the parties' arguments under General Obligations Law § 5-322.1.
The Decision and Order of this Court entered
herein on December 5, 2023 is hereby recalled and
vacated (see M-2024-133 decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 1, 2024

Footnotes

Footnote 1: The court reduced the jury award by $43,281.00 due to a mathematical error.

Footnote 2: 20 East 64th made a similar motion three years earlier, but it was denied with leave to renew.

Footnote 3: Contrary to the court's statements on the record, paragraph 5(b), which was on the reverse side of the September Purchase Order, did not appear in the same document as § 4.6.1, which was in the subcontract.